UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION

| | | |
|---|---|---|
| STATE OF ARKANSAS, *ex rel.* TIM GRIFFIN, ATTORNEY GENERAL, | ) ) ) | No. 4:22-cv-1287-BSM |
| Plaintiff, | ) ) | PLAINTIFF STATE OF ARKANSAS'S MEMORANDUM OF LAW IN |
| vs. | ) ) | OPPOSITION TO DEFENDANTS' JOINT MOTION TO TRANSFER |
| SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ............................................................................. 1

II.  ARGUMENT ................................................................................... 2

    A.  The Recently Enacted State Antitrust Enforcement Venue Act of 2022 ("SAEVA") Exempts Transfer of This Action, and Defendants are Wrong to Claim that It Has No Bearing on Their Motion ..................... 2

        1.  SAEVA Amends 28 U.S.C. § 1407 to Exempt Antitrust Actions Brought by State Attorneys General from Transfer and Consolidation with MDLs ............................................. 2

        2.  Recognizing the Congressional Intent Behind SAEVA, Courts Have Unanimously Ruled Against Transfer of Antitrust Claims Brought by States Since § 1407(g) Was Amended ........................................................................... 5

        3.  Granting the Motion Would be an End-Run Around § 1407(g) and Would Grant Defendants a Windfall ......................................... 10

    B.  The State's Case Belongs in Arkansas and Should Not Be Transferred to the Middle District of North Carolina Under § 1404(a) ............................................................................... 11

        1.  Venue Is Proper in the Eastern District of Arkansas ...................... 13

        2.  Defendants Fail to Meet Their Burden to Show that Transfer Is for the Convenience of the Parties and Witnesses ..................... 13

            a.  Convenience to the Parties .................................................... 14

            b.  Convenience to Non-Party Witnesses ................................... 15

            c.  Accessibility to Records and Documents .............................. 18

            d.  Location Where the Conduct Complained of Occurred ....... 19

            e.  Applicability of State Substantive Law ................................ 20

        3.  Defendants Fail to Meet Their Burden to Show that Transfer Is in the Interest of Justice ................................................ 20

            a.  Judicial Economy ................................................................. 21

**Page**

b.    The State's Choice of Forum ................................. 22

c.    Comparative Costs to the Parties of Litigating in Each Forum ................................................................. 22

d.    Obstacles to a Fair Trial ........................................ 23

e.    The Advantages of Having a Local Court Determine Questions of Local Law ........................................ 24

C.    The First-Filed Rule Is Not a "Rigid Solution" and Courts Grant Exceptions When Justice so Requires ........................................ 25

1.    The First-Filed Doctrine Does Not Apply to This Case Because the Cases Are Not Parallel ................................. 26

2.    Timing of Case Filing ................................................ 28

3.    The Parties are Not the Same ................................... 28

4.    The Complaints Discuss Different Issues ........................ 30

5.    Arkansas Is an Appropriate Forum ................................. 31

III.    CONCLUSION ........................................................ 31

# TABLE OF AUTHORITIES

**Cases**                                                              **Page**

*Am. Dairy Queen Corp. v. Blume*,
  562 F. App'x 545 (8th Cir. 2014) ................................................................. 22

*Am. Standard, Inc. v. Bendix Corp.*,
  487 F. Supp. 254 (W.D. Mo. 1980) ............................................................. 15

*Arkansas–Best Freight Sys., Inc. v. Youngblood*,
  359 F. Supp. 1125 (W.D. Ark. 1973)........................................................... 22

*Baldor Elec. Co. v. Nw. Nat'l Ins. Co.*,
  No. 2:09-CV-02023, 2009 WL 10706842 (W.D. Ark. Nov. 16, 2009)...................... 15

*Boatmen's First Nat'l Bank of Kan. City v. Kan. Pub. Emps. Ret. Sys.*,
  57 F.3d 638 (8th Cir. 1995) .................................................................. 25, 26

*Cambridge Filter Corp. v. Int'l Filter Co.*,
  548 F. Supp. 1308 (D. Nev. 1982) ............................................................. 15

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) ................................................................. 20

*Cooling & Applied Tech., Inc. v. Morris & Assocs., Inc.*,
  No. 2:15-CV-2211, 2016 WL 11597610 (W.D. Ark. July 26, 2016)........................ 24

*Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ................................................................. 16

*Foreman Elec. Servs., Inc. v. Haliron Power, LLC*,
  No. 4:19-CV-4157, 2020 WL 5351076 (W.D. Ark. Sept. 4, 2020) ........................ 12

*Gardner Eng'g Corp. v. Page Eng'g Co.*,
  484 F.2d 27 (8th Cir. 1973) .................................................................. 21, 22

*Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*,
  895 F. Supp. 249 (E.D. Mo. 1995)........................................................... 25, 29

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982)................................................................................ 11

*Houk v. Kimberly–Clark Corp.*,
  613 F. Supp. 923 (W.D. Mo. 1985) ............................................................. 22

**Page**

*In re Digital Adver. Antitrust Litig.*,
    555 F. Supp. 3d 1372 (J.P.M.L. 2021) ........................................................................ 5, 7

*In re Google Digit. Advert. Antitrust Litig.*,
    MDL No. 3010, 2023 WL 3828612 (J.P.M.L. June 5, 2023) ............................ 7, 8, 10

*In re Google Digital Advert. Antitrust Litig.*,
    No. 1:21-md-03010-PKC (S.D.N.Y. Mar. 9, 2023) ...................................................... 7

*In re Google Digital Advert. Antitrust Litig.*.
    No. l:21-md-3010-PKC (S.D.N.Y.) ................................................................*passim*

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
    966 F.3d 351 (5th Cir. 2020) .................................................................................... 24

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................................................... 16

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ........................................................................................ 20

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
    342 U.S. 180 (1952) ............................................................................................ 25, 26

*Latham v. Cracker Barrel Old Country Store, Inc.*,
    No. 3:08CV00145, 2008 WL 4703553 (E.D. Ark. Oct. 24, 2008) ...................... 11, 12

*Lee v. Overbey*,
    No. 08-2115, 2009 WL 10672931 (W.D. Ark. Feb. 20, 2009) .................................. 26

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998) .............................................................................................. 10, 32

*Location Servs., LLC v. Digit. Recognition Network, Inc.*,
    No. 2:18-CV-00893, 2018 WL 3869169 (E.D. Cal. Aug. 15, 2018) .................... 28, 29

*McAdoo v. Union Nat'l Bank of Little Rock, Ark.*,
    558 F.2d 1313 (8th Cir. 1977) .................................................................................. 10

*McEvily v. Sunbeam-Oster Co.*,
    878 F. Supp. 337 (D.R.I. 1994) ................................................................................ 16

**Page**

*Nelson v. Master Lease Corp.*,
    759 F. Supp. 1397 (D. Minn. 1991) ................................................................. 15

*Novartis AG v. Ezra Ventures, LLC*,
    No. 4:15-CV-00095 KGB, 2015 WL 4197692 (E.D. Ark. July 10, 2015) ................ 25

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
    989 F.2d 1002 (8th Cir. 1993) .................................................. 25, 26, 27, 28

*Orthmann v. Apple River Campground, Inc.*,
    765 F.2d 119 (8th Cir. 1985) ................................................................. 26

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .............................................................. 27, 28

*Pepper Source, LTD. V. CHEP*,
    No. 2:20-CV-2079, 2020 WL 4430988 (W.D. Ark. July 31, 2020) .......................... 25

*Reid-Walen v. Hansen*,
    933 F.2d 1390 (8th Cir. 1991) ................................................................. 16

*Seven Networks, LLC v. Google LLC*,
    No. 2:17-CV-442, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) ...................... 18, 19

*Standard Off. Sys. of Fort Smith, Inc. v. Ricoh Corp.*,
    742 F. Supp. 534 (W.D. Ark. 1990) .......................................................... 20

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*,
    119 F.3d 688 (8th Cir. 1997) ................................................... 12, 13, 20, 22

*Texas v. Google LLC*,
    No. 4:20-CV-957-SDJ, 2021 WL 2043184 (E.D. Tex. May 20, 2021) ............... 16, 18

*U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*,
    920 F.2d 487 (8th Cir. 1990) ................................................................. 26

*United States v. Google LLC*,
    No. 1:23-cv-00108-LMB-JFA (E.D. Va. Jan. 24, 2023) ................................... 5

*United States v. Google LLC*,
    No. 1:23-cv-00108, 2023 WL 2486605 (E.D. Va. Mar. 14, 2023) .......................... 6

**Page**

*Walsh v. Peterson,*
  No. 4:21-CV-867, 2022 WL 3088086 (E.D. Tex. Aug. 3, 2022) ............................... 28

*Welsher v. Frito-Lay N. Am.,*
  No. 5:14-CV-05154, 2014 WL 7331017 (W.D. Ark. Dec. 19, 2014) ....................... 29

*Williams v. Emps. Mut. Cas. Co.,*
  845 F.3d 891 (8th Cir. 2017) ................................ 11

*Williams v. Sec. Nat'l Bank,*
  314 F. Supp. 2d 886 (N.D. Iowa 2004) ....................................... 26

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
  § 1 ............................................................................... 13
  § 14 ............................................................................ 13
  § 22 ............................................................................ 12

28 U.S.C. ......................................................................... 10
  § 1391(b) ................................................................... 12
  § 1391(c) ................................................................... 12
  § 1391(d) ................................................................... 12
  § 1404 ........................................................................ 10
  § 1404(a) ............................................................. *passim*
  § 1407 .......................................................... 2, 10, 23, 32
  § 1407(g) ............................................................. *passim*

Arkansas Code Annotated
  § 4-75-301 ................................................................. 13
  § 4-75-319 .............................................................. 13, 14

Consolidated Appropriations Act,
  Pub. Law No. 117-328 § 301 (2023) ........................................ 9

Federal Rules of Civil Procedure
  Rule 1 ........................................................................ 21
  Rule 45(c)(1) ............................................................... 18

## LEGISLATIVE HISTORY

H.R. Rep. No. 117-494 (2022) ............................................ 3, 4, 6

**Page**

H.R. 3460 (2021) ......................................................................................... 3, 4

## I.  INTRODUCTION

Defendants[1] ask the Court to transfer this Arkansas state antitrust enforcement action to the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a) despite clear congressional intent to exempt state antitrust suits just like this one from consolidation into multidistrict litigation ("MDL") proceedings. 28 U.S.C. § 1407(g). Defendants skirt this exemption in their Motion to Transfer ("Motion") (ECF 19) and its memorandum in support (ECF 20) ("Mem."), and understandably so – because every court to consider this issue since § 1407(g) was amended has declined the very transfer Defendants seek. And each court has accepted Congress' unambiguous recognition of states' vital interests in vindicating the rights of their citizens, which is enshrined into law under § 1407(g). This Court should follow those well-reasoned decisions and refuse to transfer this important case – brought by the State of Arkansas (the "State" or "Arkansas") to address harms suffered by Arkansas farmers – into a foreign state.

Moreover, Defendants' analysis under 28 U.S.C. § 1404(a) and the first-filed rule is fatally flawed. With respect to the factors this Court should consider under § 1404(a) and the first-filed rule, Defendants get it wrong at each turn, exaggerating their own interests while downplaying or ignoring Arkansas's more compelling interests. When weighed

---

[1]  "Defendants" are Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC (collectively, "Syngenta") and Corteva, Inc. ("Corteva").

properly, in and concert with §1407(g), the factors favor this matter remaining in this Court, where it can get the care and attention it – and the people of Arkansas – deserve.

Indeed, granting Defendants' Motion would not only permit them to circumvent Congress' exclusion of antitrust matters brought by the states from transfer under § 1407(g), but would, in fact, give Defendants even more than they would otherwise be entitled to under § 1407, since, unlike transfers for pre-trial proceedings only under § 1407, § 1404(a) and first-filed-rule transfers are not remanded back to their original courts for trial. As such, Defendants are not only seeking to wrest control of this case away from Arkansas's duly elected Attorney General, but from the people of Arkansas themselves, to have their fate decided by a foreign jury. Defendants' Motion must be denied.[2]

## II.   ARGUMENT

### A.   The Recently Enacted State Antitrust Enforcement Venue Act of 2022 ("SAEVA") Exempts Transfer of This Action, and Defendants are Wrong to Claim that It Has No Bearing on Their Motion

#### 1.   SAEVA Amends 28 U.S.C. § 1407 to Exempt Antitrust Actions Brought by State Attorneys General from Transfer and Consolidation with MDLs

Defendants attempt to distract this Court from Congress's recent amendments to § 1407 with over 20 pages of repetitive briefing regarding the number of private and government actions that have been consolidated or coordinated in the Middle District of North Carolina. This perhaps explains why Defendants proffer a flawed, one-page analysis

---

[2]   Although the State believes the Court's decision on Defendants' Motion is self-evident, the State would nonetheless welcome the opportunity to present oral argument on Defendants' Motion if the Court believes it would be beneficial.

of SAEVA as an over-simplistic afterthought at the end of their Motion. Contrary to Defendants' statements, SAEVA is directly relevant to Defendants' Motion, as SAEVA amended §1407(g) to explicitly exempt actions like this one from being transferred, consolidated, and, most importantly, tried in another district. *See* H.R. Rep. No. 117-494, at 2 (2022).[3] Congress enacted SAEVA to expand the ability of states to enforce antitrust laws and to promote competition by expressly prohibiting the transfer of actions arising under the antitrust laws in which a state is a complainant. *See id.*

The legislative history further elucidates Congress' intent, stating that SAEVA's enactment

> exempts antitrust litigation initiated in federal district court by a state from being transferred to another venue or consolidated with other antitrust claims by the Judicial Panel on Multidistrict Litigation [("JPML")]. H.R. 3460 ***ensures that states are afforded deference*** when ***selecting*** an appropriate venue to enforce the antitrust laws and protect the public from antitrust injury.

*Id.*[4]

The motivation behind SAEVA's enactment could not be clearer. The report accompanying H.R. 3460 explains that prior to SAEVA's enactment, state antitrust claims, unlike federal antitrust claims, were not exempt from consolidation or transfer under the JPML process. *See* H.R. 3460, 117th Cong. (2021). State antitrust claims were, thus,

---

[3]   *Available at* https://www.congress.gov/congressional-report/117th-congress/house-report/494/1.

[4]   Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

subject to delay, redirection to another venue, or required to be coordinated or consolidated with slower-moving private antitrust litigation. *Id*. at 2-3. The House Committee on the Judiciary (the "Judiciary Committee") noted that due to a lack of an exemption for antitrust claims brought forth by states, the law, prior to SAEVA, was undermining the ability of a state to litigate cases in federal court in its home state, even when that court was an appropriate venue and had clear jurisdiction. *See id*. It follows, then, that SAEVA's enactment ensures that a state is afforded deference when selecting the venue of its choice; furthermore, it eliminates delay, inefficiency, and the associated higher costs that a state would experience should its claims be transferred, redirected, coordinated, or consolidated with other actions in an MDL. *See id.* at 3. Accordingly, the State here is not only entitled to deference in its venue selection, but its case is also protected from transfer to the Middle District of North Carolina, where unnecessary delay and expenses will certainly result. The aforementioned reasons are precisely why the Judiciary Committee determined it necessary to exempt state antitrust enforcement actions from transfer into to an MDL proceeding: "Exempting state antitrust actions from the JPML will eliminate unnecessary inefficiencies and delays and enable more timely and cost-efficient resolutions of state antitrust claims while also ensuring that a state can litigate claims in an appropriate venue of its choice." *Id.*

By enacting SAEVA, Congress intended to arm states with the power to enforce antitrust laws and protect the citizens of their state by ensuring that state antitrust enforcement claims against companies that have harmed vital state interests are litigated and tried in the venue of the state's choosing, leading to timely, cost-efficient litigation in

an appropriate venue. Granting Defendants' Motion would frustrate the Congressional intent behind SAEVA and allow Defendants to delay and undermine the ability of the Arkansas Attorney General to protect its constituents from Defendants' anticompetitive conduct, all while burdening the State with an inefficient and more costly legal proceeding, which Congress expressly sought to avoid.

> **2.    Recognizing the Congressional Intent Behind SAEVA, Courts Have Unanimously Ruled Against Transfer of Antitrust Claims Brought by States Since § 1407(g) Was Amended**

Since SAEVA's enactment, both the Eastern District of Virginia and the JPML have addressed the effect of the recent amendment to § 1407(g). Both rejected the same arguments Defendants advance here.

In the Eastern District of Virginia, the United States Department of Justice ("DOJ") and eight state attorneys general filed an antitrust action against defendant Google LLC ("Google"). *See* Complaint, *United States v. Google LLC*, No. 1:23-cv-00108-LMB-JFA (E.D. Va. Jan. 24, 2023), ECF 1. Google, like Defendants here, moved to transfer the DOJ's action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a), where an MDL was already pending against Google involving numerous private plaintiffs and, at the time, over one dozen state attorneys general. *See In re Google Digital Advert. Antitrust Litig.*. No. l:21-md-3010-PKC (S.D.N.Y.) (the "Google MDL"); *see also In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372 (J.P.M.L. 2021) (JPML Transfer Order).

Despite Google's argument that over two dozen related antitrust actions had already been consolidated and transferred to the Southern District of New York in the Google MDL

and related to virtually the same alleged illegal anticompetitive conduct (which the DOJ

did not dispute), Judge Brinkema denied Google's bid to transfer the DOJ action to the

Google MDL under 1404(a). *United States v. Google LLC*, No. 1:23-cv-108 (LMB/JFA),

2023 WL 2486605, at *3, *10 (E.D. Va. Mar. 14, 2023). Specifically, the court noted that

> [e]ven though Google is not seeking transfer and consolidation pursuant to § 1407(g) . . . the purpose and public policy considerations animating the exemption are persuasive and weigh in favor of denying Google's Motion to Transfer, notwithstanding concerns about judicial economy, duplicative litigation, and the risk of inconsistent judgments. The legislative history of the exclusion [in § 1407(g)] shows that Congress made the decision to subordinate concerns about judicial economy to the government and public's interest in efficient resolution of antitrust enforcement actions without delay and the need to prevent such suits from becoming bogged down with related private suits.

*Id* at *6. The court further noted that the "recent expansion of the exclusion to antitrust

actions brought by states further supports the conclusion that Congress's intent was to

prioritize efficient and expeditious adjudication of government antitrust enforcement

actions and minimize delay." *Id.* at *5 (citing to H.R. Rep. No. 117-494, at 2-4 (2022)).

Notwithstanding Google's § 1404(a) analysis and that dozens of nearly identical actions

had already been consolidated in the Southern District of New York, the Court concluded

that "transfer would contravene the congressional intent expressed in 28 U.S.C. § 1407(g),

which exempts antitrust actions brought by the federal government (and recently, state

governments) from MDL consolidation." *Id.* at *4.

Not long after Judge Brinkema denied Google's § 1404(a) transfer motion of the

DOJ's action, the JPML itself was faced with an even more analogous situation as exists

here. Specifically, by the time § 1407(g)'s amendment went into effect on December 29,

2022, the JPML had already centralized dozens of cases into the Google MDL in the Southern District of New York, including the case brought by over one dozen states (led by Texas), who had objected to inclusion in the Google MDL, arguing that their case should remain where it was pending – in the Eastern District of Texas. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1377.

Following § 1407(g)'s enactment, the states in the Google MDL asked the JPML to remand their case back to the Eastern District of Texas in light of the amendment. They did this notwithstanding that: (a) their claims had already been litigated through the motion-to-dismiss phase in the Google MDL; and (b) they were in the heat of discovery with Google, coordinating efforts (including production of millions of documents and negotiations over complex electronic discovery issues) with publisher class plaintiffs, advertiser class plaintiffs, and dozens of private direct-action plaintiffs. *See* Letter from Eric Mahr to Hon. P. Kevin Castel at 2-3, *In re Google Digital Advert. Antitrust Litig.*, No. 1:21-md-03010-PKC (S.D.N.Y. Mar. 9, 2023), ECF 504 (Google complaining about state's remand motion and listing significant activity in the Google MDL the states had engaged in to date).

Over Google's strenuous objection, the JPML granted remand of the states' enforcement action back to the Eastern District of Texas, removing it from the Google MDL completely. *In re Google Digit. Advert. Antitrust Litig.*, MDL No. 3010, 2023 WL 3828612, at *3 (J.P.M.L. June 5, 2023). Expanding on Judge Brinkema's earlier ruling, the JPML concluded that

> [o]n its face, the [SAEVA] plainly is intended to allow state antitrust actions
> to proceed **in the action's original forum**, and interpreting the subsection (g)
> amendment to eliminate the possibility of remand to that forum yields an
> absurd result that is the exact opposite of the statute's purpose.

*Id.* at *1. Thus, while Judge Brinkema denied transfer of the DOJ's antitrust action against

Google to an already established MDL, the JPML went further by remanding an already

centralized and consolidated state antitrust action out of an existing MDL and back to its

original venue in light of SAEVA. *See id.*[5]

---

[5]   On June 12, 2023, the JPML granted Google's emergency motion to stay the JPML's
order remanding the States' case back to the Eastern District of Texas. *See* Minute Order,
*In re Google Digital Adver. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. June 12, 2023), ECF
252. That stay does not change the JPML's analysis of the effect of § 1407(g)'s amendment
or the result here. The issue presently before the JPML in *In re Google* is not whether
§ 1407(g) bars transfer of state antitrust enforcement actions to an MDL (which Google
does not dispute), but whether the new law has **retroactive application** to the States' case,
since it was transferred to the MDL in the Southern District of New York more than a year
after the § 1407(g) amendment. As Google explained in the first paragraph of its motion to
stay:

> Last week, the Panel granted a motion to remand filed by the State Plaintiffs
> based on the Panel's conclusion that a newly enacted statutory amendment
> applies retroactively to undo transfers of antitrust actions brought by state
> attorneys general, regardless of whether the transfer was already completed
> before the amendment's enactment. The Panel's incomplete analysis of
> retroactivity in its decision will upend the significant efficiencies that
> coordination before the MDL court has brought to this case.

Google's Memorandum of Law in Support of its Emergency Motion for Stay Pending
Appeal by Writ of Mandamus, for a Temporary Administrative Stay Pending
Consideration of this Motion, and to Expedite Briefing and Consideration of this Motion
at 1, *In re Google Digital Adver. Antitrust Litig.*, MDL No. 3010 (J.P.M.L. June 12, 2023),
ECF 251-1; *see also id.* at 5 ("the Panel adopted a legally erroneous view of section
1407(g), as amended by the Venue Act and made legal errors in its retroactivity analysis.
Mandamus review is Google's sole avenue of relief.").

The facts of the instant case are even more compelling for denying transfer than both of the above cases. For example, the state antitrust action in *In re Google* was filed well before § 1407(g) was amended, forcing the JPML to wrestle with whether the amendment applied retroactively. *In re Google*, 2023 WL 3828612, at *1-3. Here, the State filed its case after the amendment to § 1407(g) became effective,[6] thus putting it in even a stronger factual and procedural posture.

Moreover, in *In re Google*, the JPML needed to consider the fact that Texas was one of 16 state plaintiffs jointly suing Google, diminishing the interests of the 15 other joined states, since by their own choice they would not have a trial in their home forum. *Id.* at *1. Here, Arkansas is the only Plaintiff whose interests are to be considered. Although Defendants spend pages pointing to the various pending actions now centralized or coordinated in the Middle District of North Carolina, *In re Google* provides a stark example of how having pending, related, or consolidated litigation in another district is simply not persuasive.

Both Judge Brinkema and the JPML have highlighted the importance of Congress' intent behind amending § 1407(g). Both courts agree that Congress aimed to equip states with the ability to enforce their own antitrust laws by eliminating the obstacles that transfer, consolidation, and MDLs necessarily bring. Following the reasoning of the legislative

---

[6]   *See* Consolidated Appropriations Act, 2023, Pub. Law No. 117-328 § 301 (effective Dec. 29, 2022).

history of SAEVA and the reasoning of these courts, the State's case here is clearly exempted from transfer and this action should proceed in this Court.

### 3. Granting the Motion Would be an End-Run Around § 1407(g) and Would Grant Defendants a Windfall

Allowing Defendants to obtain a transfer of this action under § 1404(a) as a workaround to § 1407(g) would result in a scenario where Defendants would receive even more than they would have been entitled to prior to the amendment of § 1407(g). In *In re Google*, the JPML determined that § 1407(g) applied retroactively, because it would be "absurd" to interpret the statute as preventing the remand of state antitrust actions back to their home forums. 2023 WL 3828612, at *4 ("interpreting the subsection (g) amendment to eliminate the possibility of remand to that forum yields an absurd result that is the exact opposite of the statute's purpose").

A similar absurd result would arise if, due to state antitrust actions being exempt from transfer under § 1407(g), they were instead transferred under § 1404(a) (as Defendants now seek), since § 1407 only allows for the consolidation or coordination for pretrial proceedings, whereas transfer under §1404(a) results in transfer of the entirety of the action, including trial. *Compare Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36-37 (1998) (explaining that § 1407 "places an obligation on the [JPML] to remand no later than the conclusion of pretrial proceedings in the transferee court") *with McAdoo v. Union Nat'l Bank of Little Rock, Ark.*, 558 F.2d 1313, 1315 n.2 (8th Cir. 1977) (discussing how "the entire case was transferred to the Eastern District of Arkansas pursuant to 28 U.S.C. [§] 1404(a)"); 28 U.S.C. § 1404(a) ("For the convenience

of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

As such, if transfer of this case is granted under § 1404(a), Defendants will unfairly get a jury trial in Syngenta's home state of North Carolina rather than Arkansas, where the damages accrued, and where the Arkansas Attorney General seeks to vindicate the rights of Arkansans harmed by Defendants' anticompetitive conduct.

In sum, the legislative history and statutory text are clear: Congress sought to defer to the sovereign interests of the states to enforce their own antitrust laws in their backyards, not take away their jury trials. Such a result should be avoided under the "absurdity doctrine." *See Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 901 (8th Cir. 2017) (citing *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.")).

### B.      The State's Case Belongs in Arkansas and Should Not Be Transferred to the Middle District of North Carolina Under § 1404(a)

Section 1404(a) governs the ability of a federal district court to transfer a case to another district. This provision reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1994).

In order to show that transfer [under § 1404(a)] is proper, the [movant] must establish that (1) venue is proper in the transferor court; (2) venue is proper

in the transferee court; and (3) the transfer is for the convenience of the parties and witnesses and promotes the interests of justice.

*Latham v. Cracker Barrel Old Country Store, Inc*., No. 3:08CV00145, 2008 WL 4703553, at *1 (E.D. Ark. Oct. 24, 2008).

The Eighth Circuit has noted that the statutory language reveals three general categories of factors that courts must consider when deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). "Defendant bears the burden of proving the alternate forum is more convenient than the one chosen by the plaintiff [and] must overcome the general principle that the plaintiff's choice of forum should be disturbed only if the balance of convenience strongly favors the defendant." *Latham*, 2008 WL 4703553, at *1.

Defendants fail to meet their burden here. As is explained below, Defendants provided no meaningful, specific evidence to establish that transfer to the Middle District of North Carolina is warranted. Rather, Defendants' only argument seems to be that transfer is justified because similar litigation is pending in the Middle District of North Carolina. While this admittedly a "valid factor for consideration," standing alone, it "does not heavily tip the balance and overcome the strong presumption favoring the parties' chosen venue." *Foreman Elec. Servs., Inc. v. Haliron Power, LLC,* No. 4:19-CV-4157, 2020 WL 5351076, at *8 (W.D. Ark. Sept. 4, 2020).

### 1.   Venue Is Proper in the Eastern District of Arkansas

Venue is proper in the Eastern District of Arkansas pursuant to 15 U.S.C. § 22 and 28 U.S.C. §§ 1391(b), (c), and (d) because each Defendant is found, resides, transacts business, and/or has agents in the State of Arkansas, and this District, and a portion of the affected commerce has been carried out in the State of Arkansas and in the Eastern District of Arkansas. More specifically, Ark. Code Ann. § 4-75-319 prescribes the relevant venue for cases brought by the Attorney General for unlawfully monopolizing trade or commerce in Arkansas, mandating that such actions "shall be filed in the Pulaski County Circuit Court" unless the action "is brought as part of an action containing claims of federal law violations, in which event the action shall be brought in the appropriate federal court." In its Complaint (ECF 1), the State brings claims of unlawful monopolization of trade or commerce in violation of Ark. Code Ann. § 4-75-301, *et seq.*, as well as federal antitrust claims arising under the Clayton Antitrust Act of 1914 (15 U.S.C. § 14) and the Sherman Antitrust Act of 1890 (15 U.S.C. § 1). Accordingly, venue is clearly proper in the Eastern District of Arkansas.

### 2.   Defendants Fail to Meet Their Burden to Show that Transfer Is for the Convenience of the Parties and Witnesses

The Eighth Circuit has identified certain relevant factors that courts should consider to determine whether transfer is for the convenience of the parties. Under that analysis, the general category of "Balance of Convenience" can include such factors as: (a) the convenience of the parties; (b) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition

testimony; (c) the accessibility to records and documents; (d) the location where the conduct complained of occurred; and (e) the applicability of each forum state's substantive law. *Terra*, 119 F.3d at 696. After a proper analysis of the relevant factors, it is clear that Defendants have failed to meet their burden of proof here.

### a.    Convenience to the Parties

Regarding the convenience of the parties, Defendants argue that the Middle District of North Carolina will be more convenient for Syngenta, as that is the jurisdiction in which its principal place of business is located. The State does not disagree with this assertion, but the remainder of Defendants' argument is manufactured. Defendants argue that the action should be transferred because "[i]t would be more convenient and efficient for Corteva to defend itself in one jurisdiction[.]" Mem. at 14. This appears only to be true because Defendants say it is; nothing more. Not only is Corteva headquartered in Indianapolis, Indiana, there is scant difference in defending in one jurisdiction versus defending in two jurisdictions. Indeed, the distance between Indianapolis and Greensboro, North Carolina is virtually the same as between Indianapolis and Little Rock, Arkansas.

Finally, regarding the convenience of the State, Defendants take the dubious position that transfer of the State's action to a forum almost 1000 miles away will be more convenient because it will allow the State to coordinate, whether it wants to or not, with the other government plaintiffs and private-action plaintiffs currently litigating in North Carolina. However, while Defendants claim that the State could have pursued its claims in North Carolina but instead opted to pursue its claims in its local venue (Mem. at 11), and while perhaps that is true, the State was permitted to file its case in "the appropriate federal

court[,]" Ark. Code Ann. § 4-75-319, and, in the State's view, that court is the Eastern District of Arkansas, where the anticompetitive conduct that harmed Arkansas farmers occurred.

Indeed, the State's choice to file in an Arkansas court – to allow an Arkansas court and ultimately Arkansas citizens to adjudicate this claim – was intentional, and the State maintains that this consideration is due considerable weight and outweighs any minor benefit conferred by joining an action with myriad other plaintiffs in North Carolina. Accordingly, the State disagrees with Defendants' assertion that "Plaintiff cannot persuasively argue that this District is significantly more convenient for litigating this case than North Carolina." Mem. at 14. On the contrary, the State's Attorney General and principal associated counsel are primarily located in Arkansas. The inconvenience of the State's representatives and counsel being required to travel to North Carolina to litigate this matter through trial rather than litigating it within the state cannot be overstated.

### b.    Convenience to Non-Party Witnesses

The second relevant factor to consider under the "Balance of Convenience" is the convenience of witnesses, including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony. Convenience of the witnesses is a critical factor in considering a motion to transfer venue. *Baldor Elec. Co. v. Nw. Nat'l Ins. Co.*, No. 2:09-CV-02023, 2009 WL 10706842, at *2 (W.D. Ark. Nov. 16, 2009); *Cambridge Filter Corp. v. Int'l Filter Co.*, 548 F. Supp. 1308, 1311 (D. Nev. 1982); *Am. Standard, Inc. v. Bendix Corp.*, 487 F. Supp. 254, 262 (W.D. Mo. 1980). However, the party seeking the transfer must clearly specify the essential witnesses to be called and

must make a general statement of what their testimony will cover. *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397 (D. Minn. 1991). In considering this factor, the court then examines the materiality and importance of the anticipated witnesses' testimony and then determines their accessibility and convenience to the forum. *Reid-Walen v. Hansen*, 933 F.2d 1390 (8th Cir. 1991). Defendants have the burden to provide these facts by way of affidavit or other information. *Id.*; *accord McEvily v. Sunbeam-Oster Co.*, 878 F. Supp. 337, 345 (D.R.I. 1994) ("Parties must state with particularity, by way of proof or affidavit, what witnesses are to be called and what the nature of their testimony and the extent of their inconvenience will be.").[7] Furthermore, any convenience or inconvenience of Defendants' representatives is irrelevant because the inconvenience of travel is considered relative to non-party witnesses, not party witnesses. *See Texas v. Google LLC*, No. 4:20-CV-957-SDJ, 2021 WL 2043184, at *5 (E.D. Tex. May 20, 2021). And bare assumptions that non-party witnesses reside in the transferee district (here, the Middle District of North Carolina) or would prefer the transferee district is insufficient. *See id.*

---

[7]   *See also Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) ("To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.") (cleaned up); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (finding this factor weighed in favor of transfer where Volkswagen "submitted a list of potential witnesses that included the third-party defendant, accident witnesses, accident investigators, treating medical personnel, and the medical examiner" and "also has submitted two affidavits, one from an accident witness and the other from the accident investigator, that stated that traveling to the Marshall Division would be inconvenient").

Defendants' Motion does not even attempt to meet this standard, focusing instead on broad and imprecise statements such as "Defendants intend to call various party and non-party witnesses from industry participants throughout the country who will testify to the nature of the programs at issue in this action and the industry in general." Mem. at 13. Defendants provide no details regarding specific witnesses, their locations, their anticipated testimony, or affidavits. Without this, the Court has no way to evaluate this factor and, as matter of law, Defendants fail to meet their burden.

In any event, considering that a central component of the instant case concerns Defendants' implementation of their "loyalty programs" to distributors and retailers, it is conceivable that some non-party witnesses (perhaps for both the State and Defendants) will be representatives from the major distributors and retailers of crop protection products. One of the nation's largest distributors of crop protection products is Helena Agri-Enterprises, which is headquartered outside of Memphis in Collierville, Tennessee. *See About Us*, Helena Agri-Enterprises, LLC, https://helenaagri.com/about-us/ (last visited June 28, 2023). The Eastern District of Arkansas would be a substantially more convenient forum for those representatives than the Middle District of North Carolina. MFA Incorporated, another large distributor, is headquartered in Columbia, Missouri, *see About Us*, MFA Inc., https://mfa-inc.com/AboutUs (last visited June 28, 2023), which is also substantially closer to the Eastern District of Arkansas than the Middle District of North Carolina. The State's witnesses, including most importantly aggrieved Arkansas farmers, would undoubtedly be inconvenienced by traveling to North Carolina to participate in

litigation and attend trial. Defendants cannot legitimately contend that this important factor weighs in its favor. It does not.

Additionally, Defendants have failed to show that the availability of the subpoena process or adequacy of deposition testimony favors transfer. The Federal Rules of Civil Procedure allow courts to subpoena non-party witnesses to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1). Only witnesses potentially unwilling to attend trial under Rule 45(c)(1) are considered under this factor.

Defendants must provide proof of the unwillingness of specific, identified third-party witnesses to travel; absent such proof, the factor is neutral. Defendants have discussed the inconvenience of their witnesses without specifying who these witnesses are and whether they would be considered "unwilling" witnesses whose presence would require compulsion. Since Defendants have provided none of this information, this Court cannot meaningfully analyze Defendants' transfer request and should find, as a matter of law, that Defendants have failed to meet their burden on this factor, too.

### c.   Accessibility to Records and Documents

Lacking any specific evidence or argument that the Middle District of North Carolina would provide greater access to sources of proof, Defendants acknowledge that this factor does not support transfer, and the State agrees. Defendants need to prove that the ease of access to proof is relatively greater in North Carolina than in Arkansas. *See Texas v. Google*, 2021 WL 2043184, at *7. To determine which venue has greater access to proof it is necessary to see where the documents and physical evidence are actually

stored. *See id.* (citing *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-442, 2018 WL 4026760, at *2 (E.D. Tex. Aug. 15, 2018) ("the vast majority of Google's electronic records are hosted in secure servers managed from its Northern California offices, not stored in its Northern California offices.")). The *Seven Networks* court reasoned that the fact that evidence "might" exist in a particular location, absent any identification of the specific documents, is insufficient. 2018 WL 4026760, at *2. Accordingly, the court held that the ease-of-access factor weighed against transfer. *Id.* at *8. So, too, should this Court.

### d.     Location Where the Conduct Complained of Occurred

Defendants argue that the claims in this case arose primarily in North Carolina, Indiana, and Delaware, because those are the locations where Defendants' relevant business decisions were made. Mem. at 15. The State agrees that some of the elements of its antitrust claims may have occurred in those locations if a substantial part of the planning or decision-making regarding the execution of Defendants' antitrust schemes was done there. Defendants suggest that because the conduct was "concentrated in no single district," this factor "should be afforded no weight," and the State agrees that this factor does not support transfer to the Middle District of North Carolina.

There is conduct relating to the State's claims, however, that occurred in Arkansas and thus supports this Court's exercise of jurisdiction and denial of Defendants' Motion. Specifically, the incentive programs and payments made to entice distributor and retailers to artificially restrict generic crop-protection products from entry into the marketplace, as well as the sales of products to Arkansas farmers at artificially inflated prices, occurred in

Arkansas. Thus, the primary location for the injuries and damages arising from the Defendants' actions are not within North Carolina, but Arkansas.

### e. Applicability of State Substantive Law

This factor undoubtedly cuts against transfer. As Defendants note in their brief, some of the State's claims raise questions under federal statutory law, with which federal courts are presumed to be equally familiar. But in addition to federal antitrust claims, the State also asserts causes of action under its own antitrust statutes. The need to apply Arkansas state law weighs against transfer because, undoubtedly, an Arkansas court is in a better position to apply substantive Arkansas law than is a North Carolina court. *See Standard Off. Sys. of Fort Smith, Inc. v. Ricoh Corp.*, 742 F. Supp. 534, 539 (W.D. Ark. 1990) ("Presumably, Arkansas judges are more familiar with Arkansas' choice of law rules and Arkansas tort law than the federal bench in New York.").

### 3. Defendants Fail to Meet Their Burden to Show that Transfer Is in the Interest of Justice

The third category of factors the Eighth Circuit has recognized is the "Interests of Justice" category. Under that category, the *Terra* court considered: (a) judicial economy; (b) the plaintiff's choice of forum; (c) the comparative costs to the parties of litigating in each forum; (d) each party's ability to enforce a judgment; (e) obstacles to a fair trial; (f) conflict of law issues; and (g) the advantages of having a local court determine questions of local law. 119 F.3d at 696. These considerations parallel the factors that courts typically analyze under § 1404(a). *See, e.g.*, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th

Cir. 1991). The ability of parties to enforce judgments and the conflicts of law factors are not particularly relevant in this litigation, but the remaining five factors do not support transfer to the Middle District of North Carolina.

**a.**     **Judicial Economy**

While Defendants argue that the "judicial economy" factor cuts in favor of transfer due to their desire to see this action coordinated with the MDL, Defendants ignore two important facts. First, the existence of an existing similar action in North Carolina is only one of the many factors to be considered by the court. By concentrating on this factor in 24 of the 25 pages that comprise Defendants' Motion, Defendants err in failing to acknowledge the importance of the other factors. Second, and perhaps more importantly, the fact is that the instant claim at issue is not an action seeking to obtain class certification. By merging this case to those currently pending in North Carolina, the Court would be allowing the State's claims to be subject to unnecessary and inevitable delay. While the cases in MDL undergo the class certification process and concomitant lengthy briefing, class-related discovery, and class expert analysis, the State would be deprived of its right to have its claims heard expeditiously. Thus, transfer would deprive the State of timely adjudication and would be against the interest of justice. It would also contravene Rule 1 of the Federal Rules of Civil Procedure, which requires courts to employ the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."

### b.     The State's Choice of Forum

Defendants understandably but improperly ignore the second "Interest of Justice" factor in their analysis. While it is obvious that the State prefers to litigate in its home state, the State's choice of forum remains one of the relevant factors of analysis for good reason.

Because venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated. *Gardner Eng'g Corp. v. Page Eng'g Co.*, 484 F.2d 27 (8th Cir. 1973). Accordingly, a plaintiff's choice of forum is given "great weight" and should rarely be disturbed. *Houk v. Kimberly–Clark Corp.*, 613 F. Supp. 923, 927 (W.D. Mo. 1985); *Arkansas–Best Freight Sys., Inc. v. Youngblood*, 359 F. Supp. 1125, 1129 (W.D. Ark. 1973). This is especially true where, as here, the plaintiff is the very state in which it brought suit. *Houk*, 613 F. Supp. at 927. Furthermore where, as here, the parties or the issues have a connection to a selected forum, the plaintiff's choice of forum is entitled to "considerable deference." *Terra*, 119 F.3d at 695; *accord Am. Dairy Queen Corp. v. Blume*, 562 F. App'x 545, 546 (8th Cir. 2014) (noting that "courts give considerable deference to plaintiff's choice of forum, and thus party seeking transfer under 28 U.S.C. § 1404(a) typically bears burden of proving transfer is warranted"). Thus, this factor weighs heavily against transfer.

### c.     Comparative Costs to the Parties of Litigating in Each Forum

Much like the analysis of the "convenience to the parties" factor, Defendants have failed to show that litigating in Arkansas would be detrimentally more expensive for them than litigating in North Carolina would be for the State. As noted above, only one of the

two defendants – Syngenta – is headquartered in North Carolina. Corteva is headquartered in Indianapolis, Indiana, which is similarly distanced from Arkansas and North Carolina. More importantly, as large multinational corporations, Syngenta and Corteva are certainly able to absorb additional litigation costs as opposed to the State using taxpayer funds to litigate a case in foreign venue. Accordingly, this factor does not support transfer.

### d.    Obstacles to a Fair Trial

As Congress found in enacting SAEVA, coordination of the State's antitrust case with the more complicated MDL pending in the Middle District of North Carolina is likely to present obstacles to a cost-effective, efficient, fair, and expedient trial. First, as Defendants note throughout their brief, Syngenta is headquartered in Greensboro, North Carolina, which is the very district Defendants seek transfer to. While *voir dire* may weed out potential jurors who may be employed by, or know someone who is employed by Syngenta, even Syngenta's president acknowledges that "[t]he Syngenta family has been part of the fabric of [the Greensboro] community for many decades, and it's [Syngenta's] goal to remain in Greensboro for many years to come[.]" *See, e.g.*, Press Release, *Syngenta recognizes Greensboro area subcontractors, helping make new North American Crop Protection Headquarters a reality*, GREENSBORO CHAMBER OF COMM. (Mar. 10, 2022), https://tinyurl.com/4744abwm.

Furthermore, transfer to North Carolina will likely relegate the State's claims to the timeline and timeframe utilized in the MDL. Given the particular circumstances of this case, it is not only conceivable but highly likely that the State's case will move faster in this Court than if coordinated with the MDL with many other pending actions.

The sheer volume of litigants and counsel will likely make coordination of efforts for litigation activities, such as depositions and hearings, much more cumbersome and slower than this case, where there are many fewer litigants and attorneys' schedules to balance. MDLs by their very nature often take many years to resolve (and only then through pretrial proceedings under § 1407). Some last decades. "Though a delay of five months might be insignificant in some contexts, administering cases in multidistrict litigation is different from administering cases on a routine docket." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 360 (5th Cir. 2020). Accordingly, this factor does not support transfer of the action.

### e.   The Advantages of Having a Local Court Determine Questions of Local Law

Finally, Arkansas has a paramount interest in adjudicating the issues in this case. Where the movant chooses a different district than the non-movant and each attempts to seek a home-court advantage, the local interest factor is neutral. Here, Defendants seek North Carolina because Syngenta is based there, but as noted, the Syngenta defendants are only three of the four Defendants. Conversely, the State prefers to have the case litigated in Arkansas, before an Arkansas court, applying Arkansas law, and it believes that the citizens of Arkansas have a vested interest in resolving this conflict. Even where principal business decisions were made in another state, where those decisions impact citizens of the forum state, the State has a significant local interest in the resolution of the dispute. *Cooling & Applied Tech., Inc. v. Morris & Assocs., Inc.*, No. 2:15-CV-2211, 2016 WL 11597610,

at *3 (W.D. Ark. July 26, 2016). Arkansas would be deprived of the benefit of litigating in its own state if the case is transferred. Defendants have not shown that transfer is proper.

### C.    The First-Filed Rule Is Not a "Rigid Solution" and Courts Grant Exceptions When Justice so Requires

The first-filed rule is a doctrine of judicial discretion based in equity that exists to promote efficiency in the federal judiciary. The doctrine provides guidance to federal courts considering how to manage litigation of similar issues in different districts. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). "The first-to-file rule is not intended to be a rigid mechanical solution to questions of forum. As in any issue of choice of forum, courts apply exceptions to the first-filed rule when justice or expediency requires." *Novartis AG v. Ezra Ventures, LLC*, No. 4:15-CV-00095 KGB, 2015 WL 4197692, at *3 (E.D. Ark. July 10, 2015). Indeed, the first-filed rule is not absolute and "will not be applied where a court finds compelling circumstances to support its abrogation." *Pepper Source, LTD. V. CHEP*, No. 2:20-CV-2079, 2020 WL 4430988, at *2 (W.D. Ark. July 31, 2020).[8]

---

[8]    Defendants cite *Boatmen's First Nat'l Bank of Kan. City v. Kan. Pub. Emps. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995) and *Gen. Comm. of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 251 (E.D. Mo. 1995) to misstate the application of the "compelling circumstances" inquiry. Defendants state the inquiry into compelling circumstances focuses only on either (a) whether the suit was anticipatory or filed in bad faith or in a race to the court, or (b) whether defendants have met § 1404(a). In *Boatmen's*, the court cites *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993), as discussed *infra*. The first-filed rule is not mechanically applied and there is careful balancing of facts that in the aggregate determine whether the rule applies. *Boatmen's*, 57 F.3d at 641. Indeed, in *Boatmen's*, the court agrees the rule "makes evident that the district court must consider the factual circumstances in each case before applying this rule." *Id.*

Further, courts ought to consider "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation[.]" *Kerotest Mfg. Co.*, 342 U.S. at 183. The first-filed rule exists to promote efficiency in the federal judiciary and "is to be applied in a manner best serving the interests of justice." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990); *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119,121 (8th Cir. 1985). Thus, a court should only apply the first-filed doctrine when it would be wise for purposes of judicial economy, efficiency, and the interests of justice. And the court must consider the factual circumstances in each individual case before applying the rule. *Boatmen's*, 57 F.3d at 641.

### 1. The First-Filed Doctrine Does Not Apply to This Case Because the Cases Are Not Parallel

The first-filed rule only exists in relation to parallel litigation, and, as Defendants note, the purpose of the rule is to "conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines*, 989 F.2d at 1006. "Parallel litigation" is litigation involving the same parties and embracing the same issues. *Orthmann*, 765 F.2d at 121. "A threshold for invocation of the first-filed rule is that litigation be parallel. In order to be parallel, the cases must be brought by the same parties and embrace the same issues." *Lee v. Overbey*, No. 08-2115, 2009 WL 10672931, at *1 (W.D. Ark. Feb. 20, 2009) (citing *Williams v. Sec. Nat'l Bank*, 314 F. Supp. 2d 886, 898 (N.D. Iowa 2004)).

Defendants cite *Northwest Airlines*, 989 F.2d at 1002. In that case, two airlines filed suit against each other in different district courts. *Id.* at 1003. Northwest Airlines, Inc. ("Northwest") filed first as plaintiff in Minnesota, and, six weeks later, American Airlines, Inc. ("American") filed a second suit as plaintiff in Texas. *Id.* The Minnesota district court granted an injunction to prevent American from proceeding in Texas. *Id.* at 1004. American appealed that decision, and while the appellate court affirmed the grant of the injunction of the second-filed action, it also noted several red flags that could justify abrogation of the first-filed rule. *Id.* at 1007. Of most relevant note, the Eighth Circuit reasoned that the district court's determination was a close call, but it found several elements that tipped the scale in favor of the first-filed action. First, that identical claims by both parties were asserted in both forums; second, that the first-filed court was more convenient than the second, as most witnesses resided there; the final element was that American made no showing of any undue burden by being forced to proceed in Minnesota.

Similarly, in *Pacesetter Sys., Inc. v. Medtronic, Inc.*, the makers of two medical devices filed patent infringement claims against each other in different courts. 678 F.2d 93, 94 (9th Cir. 1982). While upholding the district court's dismissal of the second-filed action, the appellate court found the claims involved the same issues, the same parties, and the actions only differed as to the remedy sought. *Id.* at 95-96. The Ninth Circuit noted that the first-filed rule is not mechanical but instead is a careful balancing of facts that in the aggregate counsel for or against applying the doctrine. *Id.* at 95. Those factors are the timing of the case filings, the similarity of the parties, the similarity of the issues, and whether the second-filed forum was appropriate considering convenience to the parties and

any undue burden by being forced to proceed in the first-filed forum. Of primary importance from *Pacesetter* is that the first-filed rule ought not be mechanically applied, but instead there ought to be a careful balancing of facts that in the aggregate counsel for or against a court retaining any second-filed suit. *Id.* The following factors weigh heavily against applying the first-filed rule because the cases are simply not parallel.

### 2.    Timing of Case Filing

The State does not contest that the other states filed their action, which is now in the MDL, in the Middle District of North Carolina prior to the present case. The case here was not filed until December 30, 2022, while the other states' action was filed three months prior. Chronology, however, is only one of the factors, and all others weigh strongly in favor of this Court retaining this action.

### 3.    The Parties are Not the Same

The parties in this case cannot be said to be the same parties to the same degree as Defendants' caselaw. In both *Pacesetter* and *Northwest Airlines*, the parties were identical. In *Pacesetter*, Medtronic, Inc. ("Medtronic") sued Pacesetter System, Inc. ("Pacesetter") first in Florida; afterwards, Pacesetter sued Medtronic in California. The cases were composed of the exact same parties in both actions. The same is true in *Northwest Airlines*. Northwest sued American first in Minnesota. Following that suit, American sued Northwest in Texas. Again, identical parties were involved in both actions.

Defendants cite a number of cases to support the proposition that "even in circumstances where the precise parties and/or claims differ," courts regularly transfer cases. However, none of the cases have such dissimilar parties as the present suit and apply

- 28 -

the first-filed rule. *See, e.g.*, *Walsh v. Peterson*, No. 4:21-CV-867, 2022 WL 3088086, at *3 (E.D. Tex. Aug. 3, 2022) (noting that the first action and the second action "were brought against almost identical individuals and entities"); *Location Servs., LLC v. Digit. Recognition Network, Inc.*, No. 2:18-CV-00893, 2018 WL 3869169, at *2 (E.D. Cal. Aug. 15, 2018) (finding that the parties were identical besides one defendant who was not named in the second action); *Welsher v. Frito-Lay N. Am., Inc*., No. 5:14-CV-05154, 2014 WL 7331017, at *2 (W.D. Ark. Dec. 19, 2014) (distinguishing Defendants' caselaw because "in many of the cases, there was at least some overlap of parties on each side of the lawsuit"); *Gen. Comm. of Adjustment GO-386*, 895 F. Supp. at 252 (where issue was whether "the railroad carriers can be compelled to negotiate locally, instead of nationally through their designated representative" in connection with "collective bargaining in the railway industries," the court found substantial similarity between parties because "they are all carriers and unions or local committees in the railway industry" and finding plaintiffs' argument disingenuous because "the parties involved in these li[ti]gations are guilty of forum-shopping").

Here, the State acknowledges that the Defendants here and in North Carolina are similar and that the alleged anticompetitive conduct is the same. But, unlike *Pacesetter*, *Northwest Airlines*, or any of Defendants' caselaw, Arkansas is not a party in any pending action in the Middle District of North Carolina, so all the parties are not identical nor even overlapping. The dissimilarity of the parties weighs in favor of not applying the first-filed rule or, at best, makes this factor neutral. That said, it bears repeating that, as with a transfer under § 1404(a), *see* Part II.A.3., *supra*, a first-filed-rule transfer will preclude the State's

case from being tried in Arkansas, because transfer under that rule transfers the entire case. So, while many plaintiffs in the MDL will have the benefit of going back to their originally selected court for trial, Arkansas will not. As such, the fact that all of the parties are not overlapping would prejudice the State if its case is transferred.

### 4.    The Complaints Discuss Different Issues

The issues in each action here are also dissimilar. The issues in *Pacesetter* involved allegations of patent infringement over the exact same three patents in both the first- and second-filed actions. The issues were the exact same in both cases because both parties claimed ownership of the patents. In *Northwest Airlines*, this was also the case. American asserted that Northwest was engaging in illegal, unfair practices because it hired American employees. Northwest in turn, was arguing that it was acting legally. The exact same issues.

Here, unlike in *Pacesetter* or *Northwest Airlines*, there are different issues at play. Unlike in the other states' action, the claims here concern violations of federal and Arkansas state antitrust and consumer protection laws. *See* ECF 1, ¶¶ 42-43. Defendants are correct that there are similar federal law claims asserted in both cases, but the issues are not identical. Even if there is some overlap, such is not enough to equate to similar issues as in *Pacesetter* or *Northwest Airlines.* Defendants also argue that both claims substantially overlap, but unlike in *Pacesetter*, in which the only issue was what remedy is proper, here, unique issues brought by the State to address harms suffered by Arkansas farmers also exist, and the complaints differ enough to either weigh this factor equally or against applying the first-filed rule.

### 5.   Arkansas Is an Appropriate Forum

The majority of the primary factors discussed above weigh heavily against the application of the first-filed rule. However, as the court discussed in *Northwest Airlines*, convenience to the parties is another factor that ought to be considered under the first-filed rule.

Here, as explained in detail in Part II.B.2.a.-b., *supra*, Defendants have made no showing at all that convenience – other than for Defendants – favors North Carolina, and all factors point to Arkansas as the most convenient forum for the State's principal outside counsel, third-party distributors likely to be subpoenaed by the State, and the myriad Arkansas farmers who will be asked to testify at trial concerning Defendants' anticompetitive conduct and the harm they suffered as a result. In addition, it should go without saying that the State prefers to litigate its case in its home state, and thus at the very minimum the State would be inconvenienced by not litigating in its home state, as it does every day of the week.[9] Thus, convenience of litigating in Arkansas weighs heavily in favor of not applying the first-filed rule.

## III.   CONCLUSION

The State respectfully submits that no lawful grounds exist to grant Defendants' Motion. To prevent delay, inefficiency, and higher costs when state antitrust actions are subsumed within or coordinated with an MDL, Congress expressly exempted transfers of

---

[9]   The State does not contend that choice-of-forum itself is a factor in applying the first-filed rule, for such would be incorrect. Instead, the State notes that the reason Arkansas was its choice of forum is because of how convenient it is for most parties involved.

such actions in SAEVA. Defendants have no answer to that fact. Thus, Defendants are forced to argue for transfer under § 1404(a) and the first-filed rule, but they miss the mark at every turn.

So far, at least twenty plaintiffs in the MDL are only there for pretrial proceedings, under § 1407 and *Lexecon*. When pretrial proceedings end in the MDL, every one of those plaintiffs will have their case transferred back to their original venue for trial. Every one but Arkansas's case, if this Court transfers it to the Middle District of North Carolina under either § 1404(a) or the first-filed rule. The State will be stuck in North Carolina through trial and appeals to the Fourth Circuit, because those transfers are for the entire case, not pretrial proceedings. This is a result Congress did not intend, and the courts that have wrestled with this very issue agree.

Defendants fail to meet their burden to override Congressional intent in SAEVA or justify transfer factor after factor. Consequently, their Motion should be denied in all respects.

DATED:  June 30, 2023

Respectfully submitted,

**TIM GRIFFIN**
**ATTORNEY GENERAL**

AMANDA J. WENTZ
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201
Telephone:  501/682-1178
501/682-8118 (fax)
amanda.wentz@arkansasag.gov

REDDICK LAW, PLLC
BRIAN D. REDDICK
HEATHER ZACHARY

Brian D. Reddick

One Information Way, Suite 105
Little Rock, AR  72202
Telephone:  877/907-7790
501/907-7793 (fax)
Brian@reddicklawfirm.com
HZachary@reddicklawfirm.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON[#]
DOROTHY P. ANTULLIS[#]
ALEXANDER C. COHEN[#]
ANNY M. MARTIN#
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
dantullis@rgrdlaw.com
acohen@rgrdlaw.com
amartin@rgrdlaw.com

- 33 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR L. SHINGLER III*
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
ashingler@rgrdlaw.com

THE LANIER LAW FIRM
W. MARK LANIER*
ALEX J. BROWN*
ZEKE DeROSE III*
REBECCA L. PHILLIPS*
10940 West Sam Houston Parkway North
Suite 100
Houston, TX  77064
Telephone:  713-659-5200
713/659-2204 (fax)
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com
zeke.derose@lanierlawfirm.com
rebecca.phillips@lanierlawfirm.com

*Attorneys for Plaintiff State of Arkansas*

[#] *Pro hac vice* pending

* *Pro hac vice* forthcoming