IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STATE OF ARKANSAS, ex rel.                                              PLAINTIFF
TIM GRIFFIN, Attorney General

v.                          NO. 4:22-cv-01287-BSM

SYNGENTA CROP PROTECTION AG;                                          DEFENDANTS
SYNGENTA CORPORATION;
SYNGENTA CROP PROTECTION, LLC;
and CORTEVA, INC.

# ORDER

The State of Arkansas, ex rel. Tim Griffin, ("State") has filed the pending motion to compel the production of documents. See Docket Entry 169. In the motion, the State asks that defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC, (collectively "Syngenta") be compelled to produce documents sufficient to show data on Syngenta's annual expenditures or sales volumes for Argentina, Brazil, Canada, Germany, and the Netherlands. The motion is denied. Although the documents are of some relevance, their importance

in resolving the issues is not significant, as the State has other ways of proving its claims. Moreover, the burden of producing the documents outweighs their likely benefit, as their production would require discovery from non-parties outside the United States. In addition, although no trial date is currently set, the motion was filed late in the discovery process and would necessitate additional discovery past the close of the fact discovery deadline. Last, the Court will follow the lead of a United States Magistrate Judge who denied a substantially similar motion in related cases.

The record reflects that the State began this case by filing a complaint and joining Syngenta and Corteva, Inc., ("Corteva"), two of the world's largest manufacturers of "crop protection products," products commonly known as herbicides, insecticides, and fungicides. The products contain at least one active ingredient, or "AI," that produces the intended effect. The State alleged that the Defendants operate "loyalty programs," and Syngenta specifically operates one known as the "Key AI" program, whereby the Defendants pay "rebates" to distributors and retailers for not selling generic equivalents of the Defendants' crop protection products. The State alleged that the "loyalty programs" allow the Defendants to maintain monopolies in the sale of crop production products, suppressing competition from the manufacturers of generic crop protection products.

On May 14, 2025, or approximately nine weeks before the July 22, 2025, close of the fact discovery deadline, the State served Syngenta with requests for the production of documents. The requests, which Syngenta represents were the State's fourth such requests, sought documents that included the following:

> **REQUEST NO. 4**: Documents sufficient to show data on total annual international expenditures or sales volume for all crop protection or agrochemical products, broken down by country and by product (including identification of the active ingredient(s) in each product).
>
> **REQUEST NO. 5**: Documents sufficient to show data on total annual international expenditures or sales volume for all crop protection or agrochemical products, disaggregated by product type or product segment.
>
> **REQUEST NO. 6**: All Documents and structured data created, held, and received, or used by You, relating to distributor or retailer sales, sales volumes, prices, expenditures, or applied acres for Crop Protection Products in international markets during the Relevant Time Period.

On June 13, 2025, Syngenta objected to producing the requested documents. Syngenta did so on the grounds that the requests were untimely, overly broad in that the requests seek documents from countries around the world, unduly burdensome, not proportional to the needs of the case, and not relevant to the State's claims.

The State represents that in an attempt to resolve the parties' dispute, the State narrowed its request, offering to accept documents sufficient to show data on Syngenta's annual expenditures or sales volumes for only Argentina, Brazil, Canada, Germany, and the Netherlands. Syngenta declined the offer.

On July 8, 2025, the State filed the pending motion to compel the production of documents. See Docket Entry 169. In the motion, the State asked that Syngenta be compelled to produce documents sufficient to show data on Syngenta's annual expenditures or sales volumes for Argentina, Brazil, Canada, Germany, and the Netherlands. The State maintained that the documents are relevant, alleging the following:

> Among the ways of proving damages in an antitrust case is to show the difference between what parties were actually charged and what prices would have been charged in the "but for" world if the antitrust violations did not exist. . . .
>
> One way of showing the prices charged in the "but for" world is to compare prices in different countries where the anticompetitive conduct is not taking place. . . .
>
> . . .
>
> Thus, the prices Syngenta charges elsewhere for the AIs [i.e., active ingredients] subject to its loyalty programs in the United States is a real-life "but for" world where the antitrust violations alleged in [the State's First Amended Complaint] do not exist.

See Docket Entry 169 at CM/ECF 5-7. The State additionally maintained that the scope of its requests is proportional to the needs of this case, noting that it is only seeking "data relating to foreign sales, not depositions, not interrogatory answers—data that should be easily gathered and produced by the press of a button." See Docket Entry 169 at CM/ECF 8. Last, the State maintained that its requests are not untimely as they were served on Syngenta well before the close of the fact discovery deadline.

Syngenta filed a response to the State's motion to compel, see Docket Entry 195, and opposed the motion for reasons that included the following. First, complying with the requests for production would impose extraordinary burdens on Syngenta, requiring the expenditure of thousands of working hours. Moreover, the requests raise multiple potential burdens relating to issues of international law. Syngenta supported that reason by maintaining the following:

> ... Because Syngenta operates through a different legal entity in each country and the data are stored locally, the data cannot be collected from any single entity. This request would require Syngenta to seek discovery from non-defendant entities located outside the United States. The foreign countries from which Plaintiff now demands discovery have varied data privacy and protection laws that could require consent from each individual customer. ...

5

See Docket Entry 195 at CM/ECF 7. Second, the requests are untimely, as they were made only two months before the close of the fact discovery deadline. Third, granting the motion to compel would necessitate substantially more discovery. Fourth, expenditures or sales volumes for Argentina, Brazil, Canada, Germany, and the Netherlands are not appropriate comparators. To the extent the expenditures or sales volumes for those countries might be, the State concedes that a comparison to those countries is only "one way" of several ways to analyze the "but for" world, and the State has failed to explain why the information from the countries is proportional. Moreover, the State already possesses voluminous data from the United States "sufficient to conduct multiple comparator analyses for several different types of crop protection products …" See Docket Entry 195 at CM/ECF 7. Last, a substantially similar motion to compel—one in which the United States District Court for the Middle District of North Carolina was asked to compel Syngenta to produce expenditures or sale volumes for Canada—was denied in the related cases of Federal Trade Commission v. Syngenta Crop Protection AG, No. 1:22-cv-828-TDS-JEP (M.D.N.C.), and In Re Crop Protection Products Loyalty Program Antitrust Litigation, No. 1:23-md-3062-TDS-JEP (M.D.N.C.) (MDL case). Syngenta supported that reason by maintaining the following:

6

> ... Plaintiffs in that action ("MDL Plaintiffs") similarly argued that Canadian data on six active ingredients ("AIs") alleged in the MDL Plaintiffs' complaint—five of which overlap with Plaintiff's current request—were necessary for a comparator analysis supporting their damages calculation. The Court correctly determined that the burden involved in producing the data was disproportionate to its limited relevance and the request was untimely. ... Here, Plaintiff's Motion differs from that motion only in that Plaintiff's Motion is made much later and is substantially broader, seeking data from five countries instead of one, seeking data from all products sold by Syngenta in those countries instead of just those identified in the Complaint, and imposing a commensurably higher burden. [Footnote omitted]. The [North Carolina] Court's sound reasoning in that decision applies here with even greater force.

See Docket Entry 195 at CM/ECF 8.

The State then filed a reply brief. See Docket Entry 222. The Court will not attempt to summarize the State's assertions in that submission, save to note the following. The State disputed the assertion that it unduly delayed requesting documents sufficient to show data on Syngenta's annual expenditures or sales volumes for the five countries, noting that discovery in this "complex, nationwide antitrust litigation commenced in earnest just over six months ago, in mid-January of 2025." See Docket Entry 222 at CM/ECF 7. With respect to the denial of a substantially similar motion in the North Carolina cases, the State offered the following reasons for disregarding the Magistrate Judge's ruling in those cases:

7

> ... the MDL Magistrate Judge's decision is not controlling, it was made without the benefit of a developed discovery record, and, to the extent Syngenta raised it at all during the meet-and-confer process [in the case at bar], it was without providing any specifics or providing the State's counsel any compelling reason for withdrawing the State's request for international data.
>
> Indeed—and directly to the point—there are two independent reasons why that oral ruling should carry no weight here. As an initial matter, it does not grapple with the comparative data analysis that the State's economists should be allowed to perform under accepted legal and econometric antitrust concepts, measuring how market shares of particular products in countries without Syngenta's Key AI loyalty program compare to Syngenta's monopolist market share in the United States. In addition, and compellingly, the MDL Magistrate Judge made its decision in January 2025, without the benefit of the discovery developed in the succeeding six months, including substantial deposition testimony and other evidentiary support that Syngenta, in fact, does not utilize in other countries the Key AI generic-defense scheme it employs in the United States to suppress generic competition. [Footnote omitted].

See Docket Entry 222 at CM/ECF 3-4.

Syngenta filed a sur-reply. See Docket Entry 224. The Court will not attempt to summarize Syngenta's assertions in that submission, save to note one matter. Syngenta alleged that it is "incorrect and disingenuous" for the State to claim that a "fully developed factual record was necessary to make [the State's] request for international data." See Docket Entry 224 at 6. In support of that allegation, Syngenta alleged the following:

> ... [The State] has stated that using international data for comparator analysis is a common tool (Motion to Compel at 4–5) but waited until a year into discovery to even raise the issue—multiple months following denial of MDL Plaintiffs' similar request [in <u>Federal Trade Commission v. Syngenta Crop Protection AG</u> and <u>In Re Crop Protection Products Loyalty Program Antitrust Litigation</u>], ... of which Syngenta understands [the State] was fully aware. Further, [the State] has known since before discovery started that there are countries outside of the United States where the Key AI rebate is not offered. ...

<u>See</u> Docket Entry 224 at CM/ECF 6-7.

The legal authority governing the dispute at bar is found in Rule 26(b)(1) and will not be reproduced here. It is enough to note that, in the context of this dispute, a party may obtain discovery regarding any nonprivileged matter relevant to the party's claim and proportional to the needs of the case, considering such things as the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. Despite Rule 26(b)(1)'s liberal scope, though, "it does not extend to irrelevant matters, situations where compliance is unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." <u>See</u> <u>Null v. Getchell</u>, No. 3:21-cv-00142-KGB, 2023 WL 139719, 1 (E.D. Ark. Jan. 9, 2023).

Applying the foregoing authority to the dispute at bar, the State's motion to compel is denied. The Court so finds for the following reasons.

First, the documents sought by the State—documents sufficient to show data on Syngenta's annual expenditures or sales volumes for Argentina, Brazil, Canada, Germany, and the Netherlands—are of some relevance in this case. The prices Syngenta charges in those countries for the active ingredients subject to its "loyalty programs" in the United States is likely a real-life "but for" world where the alleged antitrust violations do not exist. The documents' importance in resolving the issues here, though, is not significant and not proportional to the needs of the case.

The State candidly admits that documents sufficient to show data on Syngenta's annual expenditures or sales volumes in the five countries are just "one way" to conduct a "comparator analysis," which the State represents is "among the ways" of proving damages in an antitrust case. The State, then, has other ways of proving its claim. Because the State has other ways, this case is unlike Frame-Wilson v. Amazon.com, Inc., No. C20-424-RSM, 2023 WL 42011679, 4 (W.D. Wash. June 27, 2023), a case in which foreign data sought by the plaintiffs had a "critical role to play in determining damages," and a motion to compel the disclosure of the data was granted.

Syngenta represents that it has already provided "voluminous data on multiple U.S. 'markets' in which the Key AI rebate is not currently [offered] and/or was never offered," and the data can be used to "compare the effect of adding or removing Syngenta AIs ... from the Key AI offer, in addition to having data on other Syngenta AIs that [have] never been added to Key AI." See Docket Entry 195 at CM/ECF 23-24. The Court does not know if Syngenta's representation is accurate. If it is not, the State can certainly ask to re-open discovery for the limited purpose of obtaining the data Syngenta represents that it has already provided. If the representation is accurate, the data on other markets in the United States in which the "Key AI" rebate is not offered, or was never offered, are as relevant and useful as the data sought in the motion to compel.

Moreover, the State has failed to adequately explain why and/or how production of data from Argentina, Brazil, Canada, Germany, and the Netherlands is proportional to the needs of this case. For instance, the State has failed to adequately explain why those countries, among all the countries where Syngenta does business, were selected. The State has also failed to adequately explain why and/or how the markets in the five countries are apt comparisons to the markets in the United States where Syngenta operates its "loyalty programs."

Second, the Court recognizes that the State is only seeking documents sufficient to show data on Syngenta's annual expenditures or sales volumes for five countries. The State is not seeking to propound interrogatories or take depositions. Were the documents the State seeks as readily available as the State represents, <u>i.e.</u>, by simply pressing a button, the Court would likely look more favorably on the State's motion to compel. The Court is not convinced, though, that the documents are as easily available as the State represents, and the Court is persuaded that the burden of producing them outweighs their likely benefit.

The Court has no idea how many working hours would be required for Syngenta to comply with the State's requests for the production of documents. The Court credits, though, Syngenta's representation that granting the motion would likely give rise to issues relating to international law. Syngenta represents, and the State has not adequately rebutted, that Syngenta operates through a different legal entity in Argentina, Brazil, Canada, Germany, and the Netherlands. The State has also not rebutted that the data in each country are stored locally and gathering the data would require Syngenta to obtain information from non-parties in those countries, countries whose privacy and protection laws are likely different than those in the United States.

Third, the fact discovery deadline in this case was July 22, 2025. The State served Syngenta with the requests for the production of documents on May 14, 2025. The State's requests, then, were served before the deadline. Although the requests are not untimely, it does not follow that Syngenta should be compelled to comply with them.

The State was aware, or should have been aware, of Syngenta's international operations and could have requested documents sufficient to show data on its international expenditures or sales volumes much earlier in this case. Like the Magistrate Judge observed in the North Carolina cases, if the data were of such "critical importance," it should have been requested earlier. <u>See</u> Docket Entry 195, Declaration of Benjamin M. Miller, Exhibit E at CM/ECF 143. The State has not offered an adequate reason for its delay in requesting the data. Moreover, granting the motion to compel would necessitate additional discovery past the fact discovery deadline and expand the scope of discovery into matters about which the State was, or should have been, aware of for some time. The Court might look differently on the State's motion if it had been brought about by the discovery of new evidence or other factual developments. The State has not shown, though, that its motion was precipitated by new evidence or other factual developments.

Last, in <u>Federal Trade Commission v. Syngenta Crop Protection AG</u> and <u>In Re Crop Protection Products Loyalty Program Antitrust Litigation</u>, the plaintiffs sought documents from Syngenta sufficient to show data on its annual expenditures or sales volumes for Canada. The plaintiffs maintained that the data was necessary to conduct a "comparator analysis." When Syngenta refused to comply with the requests for the production of documents, the plaintiffs filed a motion to compel. A Magistrate Judge conducted a hearing on the motion, at the conclusion of which he denied the motion because the burden of producing the data was disproportionate to its limited relevance and the requests were untimely. <u>See</u> Docket Entry 195, Declaration of Benjamin M. Miller, Exhibit E.

The Court has thoroughly reviewed the transcript of the hearing on the plaintiffs' motion to compel in <u>Federal Trade Commission v. Syngenta Crop Protection AG</u> and <u>In Re Crop Protection Products Loyalty Program Antitrust Litigation</u>. The Court is persuaded by the Magistrate Judge's findings and conclusions with respect to the burden the State's request would have on Syngenta and the timeliness of the requests. The Court agrees that the burden is "significant or substantial," and the requests should have been made earlier. <u>See</u> Docket Entry 195, Declaration of Benjamin M. Miller, Exhibit E at CM/ECF 143.

The State maintains that the Magistrate Judge's ruling should carry no weight. The State so maintains primarily because he made the ruling without the benefit of the subsequently developed discovery, "including substantial deposition testimony and other evidentiary support that Syngenta, in fact, does not utilize in other countries the Key AI generic-defense scheme it employs in the United States to suppress generic competition." See Docket Entry 222 at CM/ECF 4. There is little merit to the State's assertion, primarily because it is apparently undisputed that Syngenta does not utilize in other countries the "Key AI" program it offers in the United States.

It is for these reasons that Syngenta will not be compelled to produce the requested documents. The State's motion to compel is denied.

IT IS SO ORDERED this 3rd day of September, 2025.

_____
UNITED STATES MAGISTRATE JUDGE