UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

CENTRAL DIVISION

| | |
|---|---|
| STATE OF ARKANSAS, *ex rel.* TIM GRIFFIN, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>vs.<br><br>SYNGENTA CROP PROTECTION AG, SYNGENTA CORPORATION, SYNGENTA CROP PROTECTION, LLC, and CORTEVA, INC.,<br><br>Defendants. | No. 4:22-cv-01287-BSM<br><br>PLAINTIFF STATE OF ARKANSAS'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT CORTEVA, INC. AND MEMORANDUM OF LAW IN SUPPORT |

Plaintiff the State of Arkansas, ex rel. Tim Griffin, Attorney General ("OAG") respectfully files this motion requesting this Court enter an Order: (1) preliminarily approving the OAG's Settlement Agreement ("Settlement") with Defendant Corteva, Inc. ("Corteva");[1] (2) approving the Notice Plan for providing notice to Consumers as defined by 15 U.S.C. § 15c; and (3) staying litigation against Corteva until the Court decides whether to grant final approval of the Settlement.

The OAG provides the instant Memorandum of Law in Support of its Motion; the Settlement Agreement (Exhibit 1); the Declaration of Arthur L. Shingler III in Support of Plaintiff State of Arkansas's Motion for Preliminary Approval of Settlement with Defendant Corteva, Inc. ("Shingler Decl.") (Exhibit 2); the Declaration of Eric A. Nordskog in Support of Plaintiff State of Arkansas's Motion for Preliminary Approval of Settlement with Defendant Corteva, Inc. ("Nordskog Decl.") (Exhibit 3); and a [Proposed] Order Granting Plaintiff State of Arkansas's Motion for Preliminary Approval of Settlement with Defendant Corteva, Inc. (Exhibit 4) for the Court's consideration.

## I. INTRODUCTION

The OAG is pleased to report that after more than three years of hard-fought, intensive litigation—including the review of over 14 million pages of documents and taking approximately 60 depositions—it has reached a Settlement to resolve its claims against Corteva. The lawsuit generally alleges that Corteva engaged in anticompetitive

[1] Capitalized terms are defined terms in the Settlement Agreement (Exhibit 1) and are used here with the same meaning.

practices concerning the marketing, sale, and distribution of certain of its pesticides. Specifically, the OAG alleges that Corteva engaged in anticompetitive conduct, by establishing arrangements with distributors and retailers aimed at suppressing competition from lower-cost generic products. The OAG alleges that such conduct violates federal antitrust laws and Arkansas antitrust, unfair practices, and consumer protection laws.[2]

The Settlement resolves and releases all of the OAG's claims against Corteva for conduct alleged in the Action in exchange for Corteva's payment of $3.1 million (the "Settlement Amount") and an agreement that any injunctive relief Corteva may be required to implement in a related case brought by the U.S. Federal Trade Commission ("FTC") and several other state attorneys general, *FTC v. Syngenta Crop Protection AG*, No. 1:22-cv-00828-TDS-JEP (M.D.N.C.) (the "*FTC* Action"), whether by settlement or judgment, will not exclude the State of Arkansas and its citizens.

As the chief legal officer of the State of Arkansas, the OAG is responsible for enforcing both state and federal antitrust and consumer-protection laws. The Action is an enforcement action brought to advance the public interest and address alleged anticompetitive activity in the agrochemical industry, which the OAG claims has resulted in higher prices for Arkansas's growers. Under 15 U.S.C. § 15c, and as a matter of public

---

[2] The OAG continues to prosecute its claims in the Action against Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC (collectively referred to as "Syngenta"). This Settlement does not release or otherwise resolve any of the claims against Syngenta. "Defendants" as used herein refers to and includes both Corteva and Syngenta.

policy, the OAG seeks the Court's approval of the Notice Plan that will inform Consumers about this Action. 15 U.S.C. § 15c mandates that consumers be notified through public announcements of settlements related to federal antitrust claims brought by a state attorneys general, including their right to opt out of any such settlement.

Upon the Court's Order directing implementation of the Notice Plan, A.B. Data, Ltd. (the "Administrator") will execute the Notice Plan, including publication of print, digital, and social media notice directed at reaching affected crop-protection product Consumers in Arkansas. *See* Nordskog Decl., ¶¶ 6-14.

## II. PROCEDURAL BACKGROUND

The OAG initiated the Action on December 30, 2022, asserting claims against Corteva and Syngenta for antitrust and consumer-protection violations. ECF No. 1; *see also* Shingler Decl., ¶ 2. The OAG generally alleges that Corteva and Syngenta operated "loyalty programs" in which they paid distributors and retailers to restrain or limit sales or purchases of generic equivalents of certain of their brand-name crop-protection products (*i.e.*, pesticides) after the exclusivity period granted for such products by patents and the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, *et seq. Id.* The OAG alleges that these "loyalty programs" enabled Corteva and Syngenta to maintain monopolies over pesticides containing certain active ingredients ("AIs") in violation of federal antitrust laws and state consumer protection laws. *Id.*

On May 19, 2023, Defendants jointly moved to transfer the Action to the United States District Court for the Middle District of North Carolina, pursuant to 28 U.S.C. § 1404(a), or alternatively under the first-filed rule. ECF No. 19. The OAG opposed

Defendants' motion to transfer on June 30, 2023. ECF No. 36. On January 17, 2024, the Court entered an Order denying Defendants' motion to transfer. ECF No. 50.

On March 22, 2024, the OAG filed a First Amended Complaint ("FAC") against Corteva and Syngenta. ECF No. 72. Defendants subsequently moved to dismiss the FAC (ECF No. 81). On February 19, 2025, the Court denied Defendants' motion to dismiss the OAG's FAC in its entirety. ECF No. 129. Defendants filed their answers to the FAC on March 25-26, 2025. ECF Nos. 144, 145, respectively. On July 14, 2025, the OAG filed its operative Second Amended Complaint ("Complaint") against Corteva and Syngenta, adding new allegations regarding the use of loyalty programs for additional AIs in Defendants' crop-protection products. ECF No. 184.

The OAG coordinated nearly all discovery with Defendants and plaintiffs in the *FTC* Action and the related multidistrict litigation styled *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, No. 1:23-md-03062-TDS-JEP (M.D.N.C.) ("*MDL* Action"). Shingler Decl., ¶ 4. These coordinated discovery efforts resulted in the taking of nearly 60 party and third-party depositions (most lasting two days), as well as the production and review of over 4.6 million documents spanning over 14 million pages. *Id.*, ¶ 5. The OAG also served Defendants with several sets of document requests under Rule 34, Rule 33 interrogatories, and Rule 36 requests for admission, and served over 60 third-party document subpoenas. *Id.*, ¶ 6.

Under the current scheduling Order, affirmative merits expert reports are due on August 10, 2026. ECF No. 294. The summary judgment deadline is the later of October 30, 2026 or 45 days after a summary-judgment ruling in the *FTC* Action. ECF No. 244.

Beginning in October 2025, the OAG and Corteva began arm's-length discussions concerning a possible resolution of the OAG's claims against Corteva in the Action. Shingler Decl., ¶ 8. However, no significant progress occurred until early January 2026, as the deadlines for merits expert reports were approaching, when the Parties' discussions kicked into high gear. *Id.*, ¶ 9. Over approximately six weeks, the Parties held numerous conversations and exchanged numerous emails regarding a possible resolution. *Id.*, ¶ 10. Ultimately, on February 18, 2026, the Parties executed a Confidential Settlement Term Sheet outlining the substantive terms of a settlement. *Id.*, ¶ 11. Thereafter, the Parties engaged in extensive discussions to negotiate a formal settlement agreement and related documents over the next few months, culminating in the Settlement now presented to the Court. *Id.*, ¶ 12.

This Settlement reached with Corteva is an excellent one that serves the public interest, greatly benefits the State of Arkansas, its citizens, and Arkansas's vitally important grower community. *Id.*, ¶ 13.

## III. SETTLEMENT TERMS

The Settlement contains several different categories of terms and relief, namely: (a) a monetary payment of $3.1 million; (b) agreement not to exclude the State of Arkansas or its citizens from any injunctive relief ordered in the *FTC* Action; (c) Preliminary and Final Court approval; (d) Exclusions and Objections; (e) use and authentication of Corteva's documents at trial; and (f) a Release. *See* Exhibit 1.

**A. Monetary Payment.**

The Settlement requires Corteva to make a total cash payment of $3.1 million to the OAG within the later of: (1) thirty (30) calendar days after the date of the Court's grant of preliminary approval of the Settlement, or (2) thirty (30) calendar days after receiving written payment instructions from the OAG. Settlement §II, ¶ 1. The OAG will use the Settlement Amount for any lawful purpose in its discretion, including, without limitation, payment of costs and attorney fees under Ark. Code Ann. § 25-16-714, payment of civil penalties, and payments for the benefit of crop farmers within the State of Arkansas. *Id.*, ¶ 2. Corteva has no obligation to make any other payments of any kind in connection with the Settlement. *Id.*, ¶ 3.

**B. Injunctive Relief.**

The Settlement ensures that any nationwide injunctive relief Corteva may be required to implement in the *FTC* Action, whether by settlement or judgment, will not exclude the State of Arkansas and its citizens.

**C. Preliminary and Final Court Approval.**

The Settlement provides that the OAG will submit a proposed notice and Notice Plan to the Court with a request for preliminary approval of the Settlement. Settlement §III, ¶ 1. The proposed Notice Plan is intended to inform those Consumers of their right to file a timely and valid request for exclusion from the Settlement as set forth in 15 U.S.C. § 15c(b). Under the Settlement, Consumers may also object or comment.

The Notice Plan is to be implemented upon the Court's Order directing its implementation. *Id.*, ¶ 3.

**D. Exclusions.**

Subject to Court approval, any Consumer may seek to be excluded from the Settlement by submitting a valid and timely request for exclusion. Settlement §IV.A, ¶ 1. Any Consumer who submits a valid and timely request for exclusion will have no rights with respect to the Settlement and will not be bound by the Settlement. *Id.* Further, subject to Court approval, to be excluded from the Settlement, a Consumer must submit a written request including: (a) his, her, or its full name; (2) address; (3) telephone number; (4) e-mail address; and (5) a statement indicating their wish to be excluded from the OAG's Settlement with Corteva. *Id* ¶ 2. Unless otherwise ordered by the Court, a request for exclusion that does not comply with all of the provisions outlined in the applicable notice will be invalid, and any Consumer serving such an invalid request shall be bound by this Settlement upon Final Court Approval. *Id.*, ¶ 3.

The OAG shall, within ten (10) calendar days of the deadline for submitting a request for exclusion (the "Opt-Out Deadline"), provide Corteva with a list of, and copies of, all requests for exclusion, and shall file with its motion for final approval a list of all persons and entities that timely and validly requested exclusion. *Id.*, ¶ 4. Any of the Parties may dispute an exclusion request, in which case they shall, if possible, seek to resolve the disputed exclusion request by agreement within thirty (30) calendar days of the Opt-Out Deadline, and, if necessary, the Parties will seek this Court's approval of any such resolutions. *Id.*, ¶ 5. If the Parties are unable to resolve any such disputes, the Parties will submit such unresolved disputes to the Court for decision. *Id.* A dispute relating to an exclusion request involving a Consumer should be addressed to this Court.

**E. Objections.**

Subject to Court approval, any Consumer who does not exclude his or her self from the Settlement may comment on or object to the Settlement by mailing to the Court and serving on the OAG and Corteva a valid and timely objection. Settlement §IV.B, ¶ 1. A valid objection must be timely submitted by the Court's Objection Deadline and include all required information as set forth in the Court's Preliminary Approval Order and Notice.

**F. Document Availability and Authenticity.**

As a condition of the Settlement, and in light of the pending Action against Syngenta, the OAG shall continue to have the same rights that it currently has to receive discovery provided by Corteva to other parties in the *FTC* Action and *MDL* Action pursuant to the Discovery Coordination Order governing the use of documents and other information produced in the Related Cases, as well as the coordination orders entered in those cases. Settlement §VII, ¶ 3. In addition, the OAG shall be permitted to maintain and use all documents produced by Corteva in the Action, as well as all transcripts of depositions of Corteva and its current or former employees related to the Action, until the entire Action is definitively dismissed. *Id.*, ¶ 4.

Corteva will also, in good faith, consider reasonable requests from the OAG regarding the authentication of Corteva documents for use in the Action, so long as such requests do not impose an undue burden on Corteva.

**G. Release.**

Upon the entry and finality of a Final Approval Order and Judgment, the OAG and Consumers will, in consideration of Corteva's obligations under the Settlement, release,

acquit, and forever discharge Corteva and all Corteva Releasees from all claims and all other relief arising from the allegations of the OAG's Complaint against Corteva or as could have been alleged in the Complaint. Settlement §V, ¶ 1.

## IV. THE OAG'S AUTHORITY

This Settlement is presented to the Court for preliminary approval by the OAG in its sovereign and proprietary capacity, and in its capacity as *parens patriae* under federal and state laws to bring claims and to obtain important redress for harm allegedly caused by Corteva's conduct. See 15 U.S.C. § 15c. The OAG has authority under federal and Arkansas law to recover: (a) for Consumers; and (b) for the State of Arkansas, in the form of civil penalties, costs, and fees. The OAG, has the authority to bring actions and seek relief and remedies for violations of federal law, as well as state antitrust and consumer protection laws, related to the facts set forth in the Complaint. Under Arkansas law, the OAG is authorized to enter into this Settlement with Corteva to secure recovery for the State of Arkansas, its Consumers on whose behalf the OAG asserts claims, and to obtain injunctive relief.

The Arkansas Deceptive Trade Practices Act ("ADTPA"), by its plain text, authorizes the OAG to enforce the law, protect the citizens of Arkansas from unfair business practices. *See* Ark. Stat. Ann. § 4-88-113. As the Arkansas Supreme Court has made clear, '"in the plain language of the statute, the responsibility for civil enforcement of the ADTPA rests largely with the Attorney General.'" *Baptist Health v. Murphy*, 2010 Ark. 358, 29, 373 S.W.3d 269, 288 (2010) (quoting *Wallis v. Ford Motor Co.*, 362 Ark. 317, 328, 208 S.W.3d 153 (2005)).

## V. ARGUMENT

In the Eighth Circuit, "strong public policy favors agreements, and courts should approach them with a presumption in their favor." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *6 (D. Minn. Dec. 4, 2020); *see also Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1149 (8th Cir. 1999). Preliminary approval of the Settlement is appropriate and warranted based on its negotiation process and its substantive terms.

### A. Standard for Preliminary Approval of the Settlement.

A *parens patriae* settlement will be approved if it is fair, reasonable, and adequate. *New York ex rel. Vacco* v. *Reebok Int'l Ltd.*, 903 F. Supp. 532, 535 (S.D.N.Y. 1995); *Troncelliti v. Minolta Corp.*, 666 F. Supp. 750, 752 (D. Md. 1987). Although the OAG's *parens patriae* case is materially distinct from a class action, courts often look to the standards used in approving class action settlements when evaluating *parens patriae* settlements. *See Reebok*, 903 F. Supp. 535; *Troncelliti*, 666 F. Supp. at 752.[3]

The *parens patriae* settlement-approval process generally involves a two-step approach: (1) preliminary approval, which occurs prior to notifying consumers, and requires the court to conduct a preliminary evaluation of the fairness of the settlement; and (2) final approval, after consumers have been notified of the settlement, the Court holds a hearing where individuals have an opportunity to be heard. Following this hearing, the court makes a final determination as to whether the settlement is fair, reasonable, and

---

[3] *Accord In re Toys "R" Us Antitrust Litig.*, 191 F.R.D. 347, 351 (E.D.N.Y. 2000); *New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 313 (S.D.N.Y. 2003); *New York v. Nintendo of Am., Inc.*, 775 F. Supp. 676, 680 (S.D.N.Y. 1991).

adequate. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 691-92 (S.D.N.Y 2019); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

A motion for preliminary approval is distinct from a motion for final approval. The preliminary approval process is governed by a "likelihood standard"—requiring the Court to assess whether the parties have shown that the Court "will ***likely*** be able to" grant final approval. Fed. R. Civ. P. 23(e)(1)(B).

Rule 23(e)(2) provides:[4]

> (2) ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only if after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the Plaintiff and its counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

---

[4] The amended Rule 23(e) gave new factors for district courts to assess in evaluating fairness, reasonableness, and adequacy. The "goal of this amendment is not to displace any [circuit's unique] factor[s]." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

The Eighth Circuit's long-standing approval factors, which overlap with those in Rule 23(e)(2), are: "'(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.'" *CenturyLink*, 2020 WL 7133805, at *6.

As detailed below, the facts and circumstances surrounding the Settlement reached here readily satisfy the requirements of Rule 23(e)(2), as well as the Eighth Circuit's factors, warranting the Settlement's preliminary approval.

**B. The Settlement Meets the Standard for Preliminary Approval.**

The Settlement satisfies the standard for preliminary approval because the Court will likely be able to grant final approval of the Settlement.

**1. The OAG Has Provided More than Adequate Representation.**

The OAG has demonstrated its ability and willingness to aggressively pursue this Action. Shingler Decl., ¶ 7. Over the last three years, the OAG has litigated the Action with exceptional vigor. *Id.* It has retained the experienced complex litigation and trial counsel of Robbins Geller Rudman & Dowd LLP, Reddick Law, PLLC, and The Lanier Law Firm, P.C., to assist in prosecuting the litigation. *Id.*, ¶ 3. It has conducted thorough investigations into the facts, successfully defeated Defendants' attempts to transfer the Action from this

---

[5] With respect to Rule 23(e)(2)(C)(iv), the Parties have not entered into any agreements outside of the Settlement.

Court, and effectively defeated Defendants' motions to dismiss. *Id.*, ¶ 7. Additionally, the OAG has approximately 60 depositions, most of which lasted two days, reviewed over four million documents, efficiently coordinated discovery with both the *FTC* Action and *MDL* Action, addressed multiple discovery disputes, most of which were resolved without the Court's intervention, while litigating others when necessary. *Id.*, ¶¶ 4-5. To support its case, the OAG also retained some of the nation's leading experts in economics and agrochemicals. *Id.*, ¶ 3. The adequacy requirement is, thus, satisfied.

### C. The Settlement Is the Product of Informed Arm's-Length Negotiations.

Courts in the Eighth Circuit have held that when a "settlement was negotiated at arms' length between experienced and sophisticated counsel," there is a "presumption that it is fair and reasonable." *Phillips v. Caliber Home Loans, Inc.*, 2021 WL 3030648, at *6 (D. Minn. July 19, 2021); *see also Toys "R" Us*, 191 F.R.D. at 351 ("[P]articipation of the State Attorneys General furnishes extra assurance that consumers' interests are protected."); *McChesney v. Holtger Bros.*, 2020 WL 13718767, at *1 (E.D. Ark. May 27, 2020). In this context, "'the recommendation of experienced counsel is entitled to great weight.'" *Yarrington v. Solvay Pharms., Inc.*, 2010 WL 11453553, at *7 (D. Minn. Mar. 16, 2010).

Here, as noted above, the proposed Settlement follows extensive, hard-fought litigation, including voluminous discovery, and arm's-length negotiations. The Settlement was achieved only after the Parties were fully informed of the strengths and weaknesses of

their claims or defenses, and of the amount of potential recovery the OAG could secure from Corteva at trial.

After extensive negotiations, the Parties agreed to settle the Action for $3.1 million. The negotiations were at all times adversarial and produced a result that is undoubtedly in Consumers' best interests. Under these circumstances, a presumption of fairness attaches to the proposed Settlement. *See, e.g.*, *Phillips*, 2021 WL 3030648, at *6; *CenturyLink*, 2020 WL 7133805, at *6 (approving settlement reached "at a stage in the litigation in which the parties understood the strengths and weakness of their case").

**D. The Relief Provided Is Substantial.**

**1. The Substantial Benefits of Settlement, Weighed Against the Costs, Risks, and Delay of Further Litigation, Support Preliminary Approval.**

"'The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *CenturyLink*, 2020 WL 7133805, at *6.[6] Here, "[t]he merits of [the OAG's] case weighed against the terms of the Settlement and the complexity and expense of further litigation weigh in favor of approval." *Id.* at *7.

Courts have long recognized that antitrust litigation, like the present one, is "difficult and complex." *Gen. Motors Corp. v. Lord*, 488 F.2d 1096, 1101 (8th Cir. 1973)

---

[6] Consistent with Rule 23's instruction to consider "the costs, risks, and delay of trial and appeal," courts in this Circuit evaluate "'the merits of the plaintiff's case, weighed against the terms of the settlement'" and "'the complexity and expense of further litigation.'" *Id.* at *5-6.

(Bright, J., concurring); *see also In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *3 (E.D. Tenn. June 30, 2014) (noting that antitrust cases "are inherently complex. The legal and factual issues are complicated and highly uncertain in outcome"); *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *13 (D.N.J. Nov. 9, 2005) ("an antitrust class action is arguably the most complex action to prosecute") (cleaned up); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) (noting that the case was "extraordinarily complex" and "raised a multitude of difficult issues in the areas of antitrust law").

Indeed, complex antitrust cases such as this one present untold risks that a plaintiff must overcome to ultimately secure a recovery. *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12387371, at *20 (N.D. Cal. Nov. 5, 2013) ("Courts have long recognized that there is generally considerable risk in antitrust cases."), *report and recommendation adopted*, 2014 WL 12879521 (N.D. Cal. June 27, 2014); *In re Se. Milk Antitrust Litig.*, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) (noting the "substantial risks taken" in litigating "antitrust cases"). These include a plaintiff showing antitrust impact through "complex expert econometric modeling." *In re Packaged Seafood Prods. Antitrust Litig.*, 2024 WL 4875246, at *6 (S.D. Cal. Nov. 22, 2024).

While the OAG is highly confident in its ability to prove the claims alleged against Corteva (which it will continue to vigorously prosecute against Syngenta), further litigation—including a trial—is always a risky proposition. *See Khoday v. Symantec Corp.*, 2016 WL 1637039, at *5 (D. Minn. Apr. 5, 2016) ("Although Plaintiffs survived motions to dismiss, . . . and motions for summary judgment, they would still have to prevail at trial

and contend with any appeals. There are several issues that remain contested."), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1099 (D. Minn. 2009) ("conclud[ing] that, at the time of settlement, there remained significant risk of a null recovery"); *DeBruycker v. PM Beef Holdings, LLC*, 2005 WL 681298, at *1 (D. Minn. Mar. 2, 2005) (defendants' advancement of arguments that "if successful, would have reduced Plaintiffs' ultimate recovery" justified the settlement).[7]

The OAG is required to prove all elements of its claims, while Corteva only needs to succeed on one defense to potentially defeat the entire Action. Corteva continues to deny all of the OAG's allegations. Therefore, the OAG risks the possibility that some of its claims may be dismissed at summary judgment, or that it may struggle to prove its claims at trial.

Even if the OAG ultimately prevails in proving its claims, it still must establish damages and the right to civil penalties under the ADTPA. This requires not only a proverbial "battle of the experts" with Corteva, but also the ability to effectively convey

[7] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (major portion of plaintiffs' verdict reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533 (S.D.N.Y. 2011) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

complex econometric principles to the jury. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 2012 WL 13034062, at *3 (E.D. Ark. Apr. 9, 2012) (denying *Daubert* motions where there is a "'classic 'battle of the experts'"); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 841-42 (E.D. Va. 2016) ("[P]laintiffs at trial would bear the burden of conveying complex information to a jury using financial records, complicated accounting principles, and expert testimony. . . . The high risk faced by taking the case to a jury verdict demonstrates the adequacy of this . . . settlement."). Corteva will certainly vigorously challenge the damages models presented by the OAG.

Even if successful at trial, the OAG may recover an amount less than this Settlement. This is particularly true here, where evidence demonstrates that Corteva had a limited presence in Arkansas. Accordingly, the recovery achieved here is an outstanding result. *See, e.g.*, *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 627 (S.D. Iowa 2016) ("[t]he settlement fund ensures that class members will receive an adequate percentage of their damages and mitigates the risk inherent in taking these legal claims to trial"), *aff'd sub nom. Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017) and *Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017).

Thus, the benefits created by the Settlement weigh heavily in favor of granting the motion for preliminary approval. There is no doubt that the recovery here warrants approval. Considering the risks associated with ongoing litigation, as well the time and expense that would be incurred in prosecuting the Action through trial and likely appeals, the $3.1 million Settlement at this stage represents a strong recovery that is in the best interests of Arkansas's citizens.

**2. Other Factors Support Preliminary Approval.**

The Settlement is also adequate under those additional factors set forth, as applicable, under Rule 23(e)(2)(C) and (D). While this is a government enforcement action distinct from a private class action (in which damages are the primary goal), here the Settlement Amount is held by the OAG for any lawful purpose, including payment of civil penalties and restitution for the benefit of crop farmers in the State of Arkansas. The OAG will administer the recovered funds at its discretion, ensuring an equitable distribution consistent with its authority. As stated in the notice, Arkansas statutory law requires the payment of the OAG's outside counsel's attorneys' fees and litigation expenses from any recovery. The amounts thereof are established by statute.

## VI. THE PROPOSED NOTICE SHOULD BE APPROVED

Under 15 U.S.C. § 15c,

> State attorney general shall, at such times, in such manner, and with such content as the court may direct, cause notice thereof to be given by publication. If the court finds that notice given solely by publication would deny due process of law to any person or persons, the court may direct further notice to such person or persons according to the circumstances of the case.

15 U.S.C. § 15c(b)(1).

As outlined in the agreed-upon proposed Preliminary Approval Order, if the Court grants preliminary approval, the OAG will advise Consumers of the Settlement by publication through digital and social media advertising. *See* Exhibits 3, 4. The Notice will advise Consumers of: (i) the pendency of the Action; (ii) the essential terms of the Settlement; and (iii) information regarding Consumers' rights to opt-out of or object to the Settlement. The Notice will also provide specifics on the date, time, and place of the final

approval hearing. The Administrator will also post a copy of the Notice and other relevant settlement documents on a website to be created for this Settlement. *See* Nordskog Decl., ¶ 14.

Thus, the form and manner of providing notice to Consumers satisfy the requirements of 15 U.S.C. § 15c(b), Due Process, and the Federal Rules of Civil Procedure, and are reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to exclude themselves, or comment on or present objections to the Settlement. Indeed, "Congress specifically directed notice by publication in *parens patriae* actions brought by State Attorneys General seeking recovery for antitrust violations on behalf of their residents and provided that further notice would be required ***only*** if the court found that due process required it." *Toys "R" Us*, 191 F.R.D. at 350-51 (citing 15 U.S.C. § 15c(b)(1)). Here, in the Administrator's expert opinion, Due Process is satisfied through publication notice. *See* Nordskog Decl., ¶¶ 7-16.

## VII. CONCLUSION

For the foregoing reasons, the OAG respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) approve the Notice Plan for providing notice to Consumers as defined by 15 U.S.C. § 15c; (3) stay litigation against Corteva until the Court decides whether to grant final approval of the Settlement; and (4) grant all other proper relief.

DATED: August 13, 2026

**TIM GRIFFIN**
**Attorney General**

By: *Amanda Wentz*
AMANDA WENTZ

AMANDA WENTZ, ABN 2021066
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
(501) 682-8118 (fax)
amanda.wentz@arkansasag.gov

BRITTANY EDWARDS, ABN 2016235
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-8114
(501) 682-8118 (fax)
Brittany.Edwards@ArkansasAG.gov

REDDICK LAW, PLLC
BRIAN REDDICK, ABN 94057
HEATHER ZACHARY, ABN 2004216
One Information Way, Suite 105
Little Rock, AR 72202
Telephone: (501) 943-1456
(501) 907-7793 (fax)
brian@reddicklawfirm.com
hzachary@reddicklawfirm.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ARTHUR L. SHINGLER III *
California Bar No. 181719

By: *Arthur L. Shingler III*
ARTHUR L. SHINGLER III

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
(619) 231-7423 (fax)
ashingler@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
MARK J. DEARMAN
Florida Bar No. 982407
DOROTHY P. ANTULLIS *
Florida Bar No. 890421
ALEXANDER C. COHEN *
Florida Bar No. 1002715
ANNY M. MARTIN *
Florida Bar No. 1000491
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
mdearman@rgrdlaw.com
dantullis@rgrdlaw.com
acohen@rgrdlaw.com
amartin@rgrdlaw.com

THE LANIER LAW FIRM, P.C.
W. MARK LANIER *
Texas Bar No. 11934600
ALEX J. BROWN *
Texas Bar No. 24026964
ZEKE DeROSE III *
Texas Bar No. 24057421
SARA E. ABSTON *
Texas Bar No. 24131972
10940 West Sam Houston Parkway North
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
(713) 659-2204 (fax)
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com
zeke.derose@lanierlawfirm.com
sara.abston@lanierlawfirm.com

THE LANIER LAW FIRM
K. RACHEL LANIER *
California Bar No. 343171
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (310) 277-5100
rachel.lanier@lanierlawfirm.com

*Attorneys for Plaintiff State of Arkansas, ex rel. Tim Griffin, Attorney General*