# EXHIBIT 1

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is made and entered into by and among the State of Arkansas, *ex rel.* Tim Griffin, Attorney General ("OAG") and Corteva, Inc. and Corteva Agriscience, LLC (collectively "Corteva") (together, the "Parties"), to settle the case that was brought by the OAG against Corteva, Inc. in the matter styled *State of Arkansas, ex rel. Tim Griffin, Attorney General v. Syngenta Crop Protection AG, et al.*, Case No. 4:22-cv-01287-BSM (E.D. Ark.) (the "Action").

WHEREAS, the OAG filed the Action on December 30, 2022, asserting claims against Defendants Syngenta Crop Protection AG, Syngenta Corporation, and Syngenta Crop Protection, LLC (collectively, "Syngenta"), and Corteva, Inc.;

WHEREAS, the OAG has asserted claims against Corteva, Inc. on behalf of itself and, in its *parens patriae* capacity, for Consumers, as defined below;

WHEREAS, on March 22, 2024, the OAG filed an Amended Complaint against Syngenta and Corteva, Inc.;

WHEREAS, beginning in or around December 2024, the OAG, Corteva, Inc., and Syngenta engaged in substantial discovery including, but not limited to, the OAG serving over 60 third-party document subpoenas; producing and reviewing 4.1 million documents (14 million pages), and taking 57 depositions;

WHEREAS, on February 19, 2025, United States District Judge Brian S. Miller (the "Court") denied Corteva, Inc. and Syngenta's motion to dismiss the Amended Complaint;

WHEREAS, on July 14, 2025, the OAG filed a Second Amended Complaint against Syngenta and Corteva, Inc.;

WHEREAS, on August 18, 2025, Corteva, Inc. filed an Answer to the Second Amended Complaint;

WHEREAS, the OAG has concluded that resolving its claims against Corteva, Inc. through settlement is in the public interest, including in the interest of those for whom or on whose behalf the OAG asserts claims; and

WHEREAS, despite Corteva's belief that it is not liable for the claims alleged, and its belief that it has good defenses thereto, Corteva has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and distraction of burdensome and protracted litigation, to obtain the releases contemplated by this Agreement, and to put to rest with finality all claims related to the allegations of the Second Amended Complaint that have been or could have been asserted against Corteva by the OAG.

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration provided in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I. DEFINITIONS

1. "Corteva Releasees" means (a) Corteva; (b) all of Corteva's past, present, and future direct and indirect parents, subsidiaries, affiliates, and divisions, including their respective predecessors, successors and assigns, in their capacities as such; and (c) each and all past, present, and future principals, partners, members, stockholders, directors, officers, employees, representatives, agents, insurers, attorneys, heirs, executors, administrators, trustees and assigs of each of the entities listed in (a) and (b), in their capacities as such.

2. "Consumers" are defined as natural persons for whom the OAG has the power to act pursuant to the OAG's *parens patriae* authority pursuant to 15 U.S.C. §15c(a)(1).

3. "Effective Date" shall be the date on which the final signatory of this Agreement executes this Agreement.

4. "Related Cases" means *FTC v. Syngenta Crop Protection AG*, No. 1:22-cv-00828-TDS-JEP (M.D.N.C.), and *In re Crop Protection Prods. Loyalty Program Antitrust Litig.*, No. 1:23-md-03062-TDS-JEP (M.D.N.C.).

5. "State Releasors" means the (a) OAG; and (b) the Consumers on whose behalf the OAG asserted claims in the Action, to the extent those Consumers do not submit a timely and valid request for exclusion from the Agreement.

## II. PAYMENT OF THE SETTLEMENT AMOUNT

1. Corteva Agriscience, LLC, on behalf of Corteva, will pay or cause to be paid $3,100,000.00 (the "Settlement Amount" or the "Settlement Fund") pursuant to the written payment instructions provided by the OAG within the latter of: (a) 30 calendar days after the date of the Court's order preliminarily approving this Agreement as set forth in Section III, herein (the "Preliminary Approval Order"); or (b) 30 calendar days after receiving written payment instructions from the OAG, if the OAG provides written payment instructions after the date of the Preliminary Approval Order. Pending final Court approval of this Agreement as set forth in Section III herein, the Settlement Amount shall be held in an interest-bearing escrow account to be established by the OAG and administered by Western Alliance Bank, which shall be the escrow agent.

2. The Settlement Amount shall be held by the OAG and used at the OAG's sole discretion for any lawful purpose, including, but not limited to: payment of notice to Consumers and the administration thereof pursuant to 15 U.S.C. §15c(b) ("Consumer Notice"); payment of costs and attorneys' fees incurred litigating the OAG's claims, as provided under Ark. Code Ann. § 25-16-714 (collectively, "Costs and Fees"); payment of civil penalties, and restitution for the benefit of crop farmers within the State of Arkansas.

3. Corteva shall have no obligation to make any other payments of any kind in connection with the Action or this Agreement. Corteva also shall have no obligations with respect to the allocation or distribution of any of the Settlement Fund. The OAG shall have no other recovery of any kind from Corteva or the other Corteva Releasees (as defined herein) related to the Released Claims (as defined herein) other than the Settlement Amount, including for attorneys'

fees, costs, damages, penalties, or injunctive or other relief of any kind, except as otherwise set forth herein.

4. The Settlement Fund shall be held in escrow pending Final Court Approval pursuant to Section III herein. The State Releasors shall look solely to the Settlement Amount for settlement and satisfaction against the Corteva Releasees of all Released Claims, as defined in Section V herein, and shall have no other recovery against Corteva or any of the Corteva Releasees for any Released Claims pursuant to the terms of this Agreement. The Corteva Releasees shall have no responsibility for, interest in, or liability whatsoever with respect to any transaction undertaken by the OAG concerning, or disbursements by the OAG from, the Settlement Fund.

5. The OAG shall not disburse the Settlement Fund except: (a) as provided in this Agreement; or (b) by an order of the Court.

6. Subject to further order(s) or directions as may be made by the Court, or as provided in this Agreement, the OAG is authorized to execute such transactions or disbursements as are provided for under the terms of this Agreement.

7. All funds held in escrow shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court until Final Court Approval.

8. A maximum of $100,000.00 of the Settlement Amount shall be initially set aside for: (a) the cost of providing notice to those Consumers on whose behalf the OAG asserts claims; and (b) notice-related administration costs. To the extent such expenses have been actually incurred or paid for such notice and related administration costs, those notice and related administration expenses (up to the maximum of $100,000.00 from the Settlement Amount) are not recoupable by Corteva if the settlement set forth in this Agreement does not become final. For the avoidance of doubt, all costs associated with notice shall be paid from the Settlement Amount; Corteva shall have no obligation to contribute any funds beyond the Settlement Amount towards notice costs.

9. Should Final Court Approval not occur regarding this Agreement: (a) the OAG shall return all remaining portions of the Settlement Amount (net of costs incurred and expended in accordance with Paragraph II(8) to Corteva within 30 calendar days of the Court's final determination; and (b) Corteva shall not be liable for any of the costs or expenses of the litigation incurred by the OAG in the Action, including attorneys' fees; fees and expenses of expert witnesses and consultants; and costs and expenses associated with discovery, motion practice, hearings before the Court or in the Related Cases, appeals, trials, or the negotiation of other settlements, or for the notice process under this Agreement, except as otherwise set forth herein or by Court order.

## III. PRELIMINARY AND FINAL COURT APPROVAL

1. The date on which the final signatory of this Agreement executes this Agreement shall be the Effective Date. Within 30 calendar days of the Effective Date, the OAG shall file a motion for entry of an order preliminarily approving: (a) the terms of this Agreement as fair, reasonable, adequate and in the best interests of State of Arkansas and Consumers for whom the OAG asserts claims in its *parens patriae* or other representative capacity; and (b) the form and manner of Consumer Notice required by 15 U.S.C. § 15c(b) (the "Preliminary Approval Order").

2. In the event that the Court denies preliminary approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing preliminary approval while retaining the spirit of the Agreement. If they are unable to agree on such revisions despite their good faith efforts, they shall each have the option to rescind this Agreement.

3. At such time as directed by the Court, those Consumers on whose behalf the OAG has asserted claims shall be given notice and opportunity to file a timely request for exclusion as required by 15 U.S.C. § 15c(b) (the "Notice Period").

4. Within 30 calendar days following the conclusion of the Notice Period, or as otherwise agreed by the Parties or directed by the Court, the OAG shall file with the Court a Motion for entry of an Order for final approval of the Agreement and Judgment ("Final Approval Order and Judgment"). The Final Approval Order and Judgment gives final approval of this Agreement and releases all Released Claims, as set forth in Section V herein. The Parties intend for the Final Approval Order and Judgment to include provisions: (a) finding this Agreement as having been entered into in good faith, and as being fair, reasonable, and adequate, and directing its consummation pursuant to its terms; (b) finding that the notice given constitutes due, adequate, and sufficient notice under 15 U.S.C. § 15c, and meets the requirements of due process; (c) incorporating the releases set forth in Section V herein, and forever barring the State Releasors from asserting any Released Claims (as defined in Paragraph V(2) herein); (d) retaining exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Settlement; (e) directing that all claims by and on behalf of the State Releasors be dismissed with prejudice as to the Corteva Releasees only and, except as provided for herein, with prejudice and without costs or attorneys' fees recoverable under 15 U.S.C. § 15(a); and (f) determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and entering judgment in the Action only as to the Corteva Releasees shall be final and immediately appealable.

5. This Agreement shall become final upon (a) the entry of a final order approving the Agreement and a final judgment dismissing the Action with prejudice as to Corteva, and without awarding fees or costs other than those provided for in this Agreement; and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to Corteva described in (a), has expired or, if appealed, approval of this Agreement and the final judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken, and such affirmance is no longer subject to further appeal or review and no other motion or pleading related to entry of final judgment as to Corteva is pending in any court ("Final Court Approval"). It is agreed that the provisions of Federal Rule of Civil Procedure 60 shall not be taken into account in determining the above-stated times. On the Effective Date, OAG and Corteva shall be bound by the Agreement's terms, and this Agreement shall not be rescinded, except in accordance with Section VIII of this Agreement.

## IV. EXCLUSIONS AND OBJECTIONS

### A. Exclusions

1. Subject to Court approval, any Consumer may seek to be excluded from the settlement set forth in this Agreement by submitting a valid and timely request for exclusion pursuant to 15 U.S.C. §15c(b)(2). Any Consumer that submits a valid and timely request for exclusion shall have no rights with respect to the settlement as set forth in this Agreement, including, but not limited to, any right to receive a benefit from any distribution from the Settlement Fund. Corteva reserves all legal rights and defenses as to all such Consumers that submit a valid and timely request for exclusion, and nothing in this Agreement shall be used against Corteva in any proceeding involving such persons.

2. Subject to Court approval, in any written request for exclusion from the settlement set forth in this Agreement, the Consumer seeking exclusion must: state his or her full legal name, address, telephone number and e-mail address; include a statement that he or she wishes to be excluded; include sufficient evidence to establish purchases between October 27, 2018 and the date Notice is published, inclusive, of Corteva-branded crop protection products subject to this Action (the "Crop Protection Products"); and include with their exclusion request a handwritten signature. In addition, any Consumer that seeks to exclude from the settlement set forth herein any claims assigned to that Consumer must submit documentation demonstrating such assignment and their authority to exclude those claims from the terms of this Agreement. Consumers shall not be permitted to exclude other Consumers. Moreover, group or *en masse* exclusions shall not be permitted. A request for exclusion must be submitted by each Consumer on an individual basis, and any request for exclusion by a purported authorized agent or representative of a Consumer must include proof of the representative's legal authority and authorization to act and request exclusion from the terms of this Agreement on behalf of each individual Consumer they seek to exclude.

3. Subject to Court approval, a request for exclusion that does not comply with all of the provisions set forth in the applicable notice will be invalid, and the Consumer serving such an invalid request shall be bound by this Agreement upon Final Court Approval.

4. The OAG shall, within ten calendar days of the deadline for submitting a request for exclusion (the "Opt-Out Deadline"), provide Corteva with a list of, and copies of, all requests for exclusion. The OAG shall file with its Motion for Final Approval Order and Judgment a list of all Consumers that timely and validly requested exclusion.

5. Either Party may dispute an exclusion request, in which case it shall, if possible, seek to resolve the disputed exclusion request by agreement within 30 calendar days of the Opt-Out Deadline. If necessary, the Parties will seek court approval of any such resolutions. If the Parties are unable to resolve any such disputes, the Parties will submit such unresolved disputes to the Court for decision.

### B. Objections

1. Subject to Court approval, any Consumer on whose behalf the OAG has asserted claims may object to the settlement set forth in this Agreement by mailing the Court and serving

on designated counsel for the OAG and Corteva a timely written notice of his or her objection. Such objection shall state: (a) the objector's full legal name, address, telephone number, and e-mail address (if any); (b) information identifying the objector as a Consumer, including proof that the objector is a Consumer (e.g., copy of invoice showing purchase between October 27, 2018 and the date Notice is published, inclusive, of Corteva-branded Crop Protection Products subject to the Action); (c) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (d) the identity of all counsel representing the objector, including the identity of all counsel who will appear at the hearing to consider Final Court Approval; (e) a list of all persons who will be called to testify at the hearing to consider Final Court Approval in support of the objection; (f) a statement confirming whether the objector intends to personally appear or testify at the hearing to consider Final Court Approval; and (g) the objector's signature and the signature of the objector's duly authorized attorney. To be timely, written notice of an objection in the appropriate form must be filed with the Court and served on the OAG and Corteva by the deadline set by the Court for the submission of objections (the "Objection Deadline"), which shall be the same deadline as the Opt-Out Deadline, unless otherwise ordered by the Court.

2. Except upon a showing of good cause, or as otherwise allowed by the Court, any Consumer who fails to comply with the requirements for objecting as set forth herein shall waive and forfeit any and all rights he or she may have to appear separately or to object to the Agreement, and shall be bound by all the terms of the Agreement and by all proceedings, orders and judgments in the Action against Corteva. The exclusive means for any challenge to the Agreement shall be through the provisions set forth herein.

3. Submitting timely written notice of an objection under this Section shall constitute the objecting Consumer's consent to jurisdiction of the Court and to accept service of process, including subpoenas for testimony, at the e-mail address provided in the written notice of the objection.

4. A Consumer who files an objection waives the right to opt-out. Conversely, a Consumer who opts out waives the right to object to the Agreement.

## V. RELEASE

1. In consideration of Corteva's obligations under this Agreement, the State Releasors hereby release, acquit, and forever discharge the Corteva Releasees from all Released Claims.

2. "Released Claims" means any and all claims, damages, restitution, injunctive or other equitable relief, penalties, causes of actions or complaints, whether arising in law or in equity, or arising under any statute or regulation, including without limitation any state or federal antitrust statutes, or any federal or state unfair competition, deceptive trade practice, or consumer protection laws, that the State Releasors ever had, now have, or hereafter can, shall or may ever have on account of, or in any way arising from or relating to Corteva's marketing, sale, or distribution of, or Arkansas's citizens' purchases of or payments for, Corteva's Crop Protection Products as alleged or as could have been alleged in the Action to the fullest extent allowed by law. The State Releasors shall not, after the Effective Date of this Agreement, seek to establish liability against any Corteva Releasee as to, in whole or in part, any of the Released Claims or conduct at issue in

the Released Claims unless this Agreement is, for any reason, not finally approved or is terminated or rescinded.

3. As part of the proposed orders to be submitted to the Court with the Motion for Final Approval under Section III of this Agreement, the OAG shall dismiss with prejudice all claims against Corteva in the Action. All Released Claims shall be finally, fully, and forever resolved, settled, compromised, and released, with prejudice, and the Corteva Releasees shall not be named a defendant in any future new or amended complaint arising out of the Released Claims.

4. This Agreement resolves claims only against the Corteva Releasees, and except as specifically provided herein, is not intended to affect in any way the rights that the OAG has or may have against any other party, person, or entity that is not included within the definition of Corteva Releasees, including Syngenta.

## VI. FUTURE BUSINESS PRACTICE COMMITMENTS

The Final Approval Order and Judgment shall contain a provision that any nationwide injunctive relief Corteva may be required to implement in the matter of *FTC v. Syngenta Crop Protection AG*, No. 1:22-cv-828-TDS-JEP (M.D.N.C.), whether by settlement or judgment, shall be equally applicable in the State of Arkansas, and will not exclude the State or its citizens from such injunctive relief. Such injunctive relief shall be incorporated herein and shall be enforceable by the OAG as though set forth fully in the terms of this Agreement.

## VII. DISCOVERY, AUTHENTICATION, AND COOPERATION

1. Starting on the Effective Date and continuing unless this Agreement is terminated or rescinded as provided herein, the OAG shall not file any motions against Corteva, Inc., or take any other adverse action against Corteva, Inc., in the Action or any of the Related Cases except to enforce the terms of this Agreement. For the avoidance of doubt, the OAG may continue to prosecute its claims against Syngenta in the Action.

2. Likewise, as of the Effective Date and continuing unless this Agreement is terminated or rescinded as provided herein, Corteva, Inc. shall not file any motions against the OAG, or take any other adverse action against the OAG in the Action or any of the Related Cases, except to enforce the terms of this Agreement.

3. The OAG and Corteva, Inc. agree to continue to be bound by that the provisions of the Discovery Coordination Order entered in this Action during the pendency of the Related Cases.

4. The OAG shall be permitted to maintain and use all documents produced by Corteva, Inc. in the Action, as well as all transcripts of depositions of Corteva, Inc. and its current or former employees in the Action, until the entire Action is finally dismissed.

5. Corteva, Inc. will also in good faith consider and agree to any reasonable requests from the OAG with respect to the authentication of Corteva, Inc. documents for use in the Action, provided that such requests do not impose an undue burden on Corteva.

## VIII. RESCISSION IF AGREEMENT IS NOT APPROVED OR FINAL JUDGMENT IS NOT ENTERED

1. In the event that the Court denies Final Court Approval to this Agreement, then the Parties shall in good faith seek to agree on revisions to this Agreement that would remedy any issues preventing Final Court Approval while retaining the spirit of the Agreement. If they are unable to come to agreement on such revisions, despite their good faith efforts, they shall each have the option to rescind this Agreement.

2. Written notice of the exercise of any right to rescind provided for under this Section shall be made according to the terms herein.

3. In the event that this Agreement does not receive Final Court Approval, or this Agreement otherwise is terminated or rescinded by any Party under any provision herein, then: (a) this Agreement shall be of no force or effect, except as expressly provided in this Agreement, and all proceedings in this Action and the Parties shall return to the status quo ante, as of February 18, 2026, without prejudice to the Parties' respective rights; and (b) the Settlement Amount shall be returned forthwith to Corteva less only disbursements made in accordance with Paragraph II(8), or as otherwise set forth herein or ordered by the Court. All Parties expressly reserve all of their rights, claims and defenses if this Agreement does not receive Final Court Approval or is otherwise terminated or rescinded.

4. Corteva and the OAG agree that neither this Agreement (whether or not it should become final), nor a final judgment, nor any and all negotiations, Documents (as defined by Rule 34 of the Federal Rules of Civil Procedure), or discussions associated with any of such, shall be deemed or construed to be evidence or an admission by Corteva of any violation of any federal, state, or local law of any jurisdiction in the United States, or of any liability or wrongdoing whatsoever by Corteva, or of the truth of any of the claims or allegations contained in any Complaint or any other submission filed by OAG in the Action, and evidence thereof shall not be discoverable or used in any way against Corteva, whether in this Action, or any other arbitration, action, or proceeding whatsoever, including, but not limited to the Related Actions. Neither this Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any other action taken to carry out this Agreement by Corteva, shall be referred to, offered as evidence or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceeding, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. Notwithstanding any other provision of this Agreement, the parties and their counsel further agree that this Agreement and any of its terms and provisions, and any and all negotiations, Documents, and discussions associated with them and any other statements made by counsel for Corteva in connection with or as part of this settlement, shall be governed by Federal Rule of Evidence 408 and analogous state laws or rules. Nothing in this Paragraph shall be construed to limit the use of this Agreement to enforce its terms.

## IX. NOTICE

1. Notice to Corteva pursuant to this Agreement shall be sent by registered United States mail, return receipt requested, and electronic mail to:

Jason Leckerman
Emilia McKee Vassallo
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599.
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com

2. Notice to the OAG pursuant to this Agreement shall be sent by registered United States mail return receipt requested and electronic mail to:

Amanda Wentz
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
amanda.wentz@arkansasag.gov
consumer@arkansasag.gov

Arthur L. Shingler III
ROBBINS GELLER RUDMAN & DOWD LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
ashingler@rgrdlaw.com

Zeke DeRose III
THE LANIER LAW FIRM
10940 W. Sam Houston Pkwy N. Suite 100
Houston, TX 77064
Zeke.DeRose@LanierLawFirm.com

Brian Reddick
REDDICK LAW FIRM
One Information Way, Suite 105
Little Rock, AR 72202
Brian@ReddickLaw.com

## X. MISCELLANEOUS

1. The Parties acknowledge that it is their intent to consummate this Agreement; and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Agreement.

2. The Parties intend this Agreement to be a final and complete resolution of all disputes between them with respect to the Action. The Agreement compromises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that throughout the course of the litigation, all Parties and their counsel

complied with the provisions of Federal Rule of Civil Procedure 11 and that the Action is being settled voluntarily by the Parties after consultation with competent legal counsel. The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Action was brought or defended in bad faith or without a reasonable basis. It is agreed that no Party shall have any liability to any other Party as it relates to the Action, except as set forth herein.

3. The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

4. This Agreement contains the entire understanding between the OAG and Corteva regarding settlement of the Action and supersedes all previous negotiations, agreements, commitments, understandings, and writings between the OAG and Corteva in connection with settlement of the Action. Except as otherwise provided herein, each Party shall bear its own fees and costs.

5. Each counsel or other person executing this Agreement on behalf of any Party hereto hereby warrants that such counsel or person has the full authority to do so.

6. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

7. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

8. The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

9. All dollar amounts are in United States dollars (USD).

10. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

******Remainder of Page Left Intentionally Blank******

DATED: July 15 , 2026

**TIM GRIFFIN**
**Attorney General**

By: ______________________
AMANDA WENTZ, ABN 2021066
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-1178
(501) 682-8118 (fax)
amanda.wentz@arkansasag.gov

BRITTANY EDWARDS, ABN 2016235
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-8114
(501) 682-8118 (fax)
Brittany.Edwards@ArkansasAG.gov

REDDICK LAW, PLLC
BRIAN REDDICK, ABN 94057
HEATHER ZACHARY, ABN 2004216
One Information Way, Suite 105
Little Rock, AR 72202
Telephone: (501) 943-1456
(501) 907-7793 (fax)
brian@reddicklawfirm.com
hzachary@reddicklawfirm.com

ROBBINS GELLER RUDMAN
& DOWD LLP

MARK J DEARMAN*
Florida Bar No. 982407
DOROTHY P. ANTULLIS*
Florida Bar No. 890421
ALEXANDER C. COHEN*
Florida Bar No. 1002715
ANNY M. MARTIN*
Florida Bar No. 1000491
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
(561) 750-3364 (fax)
sdavidson@rgrdlaw.com

dantullis@rgrdlaw.com
acohen@rgrdlaw.com
amartin@rgrdlaw.com

ROBBINS GELLER RUDMAN
& DOWD LLP
ARTHUR L. SHINGLER III*
California Bar No. 181719
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 231-1058
(619) 231-7423 (fax)
ashingler@rgrdlaw.com

THE LANIER LAW FIRM, P.C.
W. MARK LANIER*
Texas Bar No. 11934600
ALEX J. BROWN*
Texas Bar No. 24026964
ZEKE DeROSE III*
Texas Bar No. 24057421
SARA E. ABSTON*
Texas Bar No. 24131972
10940 West Sam Houston Parkway North
Suite 100
Houston, TX 77064
Telephone: (713) 659-5200
(713) 659-2204 (fax)
mark.lanier@lanierlawfirm.com
alex.brown@lanierlawfirm.com
zeke.derose@lanierlawfirm.com
sara.abston@lanierlawfirm.com

THE LANIER LAW FIRM
K. RACHEL LANIER*
California Bar No. 343171
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (310) 277-5100
rachel.lanier@lanierlawfirm.com

* *Pro hac vice* admitted

*Attorneys for Plaintiff State of Arkansas, ex rel. Tim Griffin, Attorney General*

DATED: July 15, 2026

BALLARD SPAHR LLP

By:____________________________

Jason Leckerman*
Emilia McKee Vassallo*
Elizabeth Weissert*
Thomas Hazlett*
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599.
Telephone: (215) 665-8500
LeckermanJ@ballardspahr.com
McKeeVassalloE@ballardspahr.com
WeissertE@ballardspahr.com
HazlettT@ballardspahr.com

CRAVATH, SWAINE & MOORE LLP
Wes Earnhardt*
Jesse M. Weiss*
Margaret T. Segall*
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
(212) 474-3700 (fax)
wearnhardt@cravath.com
jweiss@cravath.com
msegall@cravath.com

QUATTLEBAUM, GROOMS
& TULL PLLC
Steven W. Quattlebaum, ABN 84127
John E. Tull III, ABN 84150
Laura L. O'Hara, ABN 2021150
111 Center Street, Suite 1900
Little Rock, AR 72201
Telephone: (501) 379-1700
(501) 379-1701 (fax)
quattlebaum@qgtlaw.com
jtull@qgtlaw.com
lohara@qgtlaw.com

* *Pro hac vice* admitted
*Attorneys for Defendant Corteva, Inc.*